## COX, Trustee, Appellant, v. SLOAN.

## (No. 1.)

### Division One, November 12, 1900.

158  411
f158  430
f158  438
158  439
f158  440

1. Negotiable Notes: CONSIDERATION. Notes negotiable in form *prima facie* import a valuable consideration. To overcome such *prima facie* case, it is necessary for the opposite party to affirmatively plead want of consideration, and to support the plea by competent proof.

2. ———: EXTENSION: VALUABLE CONSIDERATION. A bank of which defendant was president, owed plaintiff bank two notes for $9,000 and $12,000 respectively, both past due, and signed on the back by the seven directors, including defendant. These notes were renewal notes given for other notes originally given to secure that amount of money previously loaned defendant's bank by plaintiff. They were past due, and the makers wanted an extension of time and offered new notes of similar character for the same amount, but plaintiff was unwilling to grant the extension unless it got further security. To accomplish this plaintiff's cashier went to the town of the defendant's bank, and laid the matter before the defendant, and he at first refused to give further security, but the next day, when it was made plain to him that plaintiff would not otherwise renew the notes or carry his bank longer, and when the possible failure of the bank stared him in the face, he changed his mind and made the two notes in suit for $4,000 and $6,000 respectively, and secured them by a deed of trust, and then the other notes were renewed and the time of their payment extended. *Held,* that the extension was supported by a valuable consideration, and can not be avoided on the ground that they were given as collateral security for the payment of the other two notes.

3. ————: ————: NECESSARY TESTS. The extension of the notes in this case was a benefit to the defendant, because he was a party to the notes extended and was a stockholder of, and depositor in, the bank for whose benefit they were primarily made, and would therefore be injured by its failure; it was also a benefit to the bank conferred by his request; it was besides a risk to the plaintiff bank which made the loan. These are the tests of a valuable consideration for an extension of the time of a note.

4. ————: ————: PRE-EXISTING DEBT. A pre-existing debt of the drawer, maker or acceptor of a negotiable note is a valid consideration for his drawing or accepting a bill or executing a note. In this case the maker of the notes sued on which the defendant had given for the purpose of obtaining a renewal of notes, which his bank had executed to plaintiff, was a co-maker of such renewal notes, for he had signed his name on the back thereof.

5. ————: EVIDENCE: COLLATERAL CONTRACT. Notes sued on can not be shown, by a collateral contract entered into at the time, to have been made as collateral security for the payment of the notes of a bank, if the maker of such note also signed such bank notes as a maker by writing his name on the back thereof.

6. ————: ————: PARTY'S OWN EVIDENCE. Defendant can not be heard to say that the evidence which shows the notes sued on to be other than collateral security was inadmissible, if he himself offered it. Such evidence must be considered in determining the purpose of the notes.

7. ————: NOTE MADE BY EXECUTIVE OFFICERS: BANK'S NAME ON BACK: NOVATION. The cashier and assistant cashier as several and joint makers executed notes to plaintiff bank to meet an overdraft of their bank with such bank, and then before delivery the name of their bank was written on the back thereof. *Held*, that the debt was clearly the debt of the bank, and there was no novation.

8. Collateral Collections: APPLICATION. Where collateral notes deposited with a bank are for the security of the entire debt and no direction is made as to the application of the money collected, the bank may apply it to any part of the debt it pleases. And if the defendant has given his notes as a further collateral security of such debt, he can not be relieved of paying such notes until the whole of the debt has been paid.

Cox v. Sloan.

9. **Practice:** SUIT AT LAW OR IN EQUITY. In a trial by the judge alone, where there is no essential conflict in the evidence, it is immaterial whether the case be determined to be one at law or in equity, since the facts being conceded it is the duty of the court in either case to administer the true law.

10. ———: ———: ACCOUNTING. Where the answer seeks an account-. ing, it turns a suit at law based on negotiable notes into one in equity.

Appeal from Cass Circuit Court.—*Hon. W. W. Wood,* Judge.

REVERSED AND REMANDED *(with directions).*

*D. B. Holmes* and *R. T. Railey* for appellant.

(1) The defendant, in his answer, undertakes to set out facts which entitle him to affirmative equitable relief. In his prayer, he likewise asks affirmative equitable relief. In discussing the case, therefore, we shall do so, upon the theory that the proceeding is one in equity, and shall refrain from discussing the declarations of law given and refused by the trial court. Conran v. Sellew, 28 Mo. 322; Wendover v. Baker, 121 Mo. 290. (2) Defendant (with the other six directors) was an indorser and maker of said $9,000 and $12,000 notes, and under the law was, primarily liable individually, for every dollar of same. When he, therefore, executed the notes sued on, as collateral security for the foregoing indebtedness, he was simply securing a pre-existing debt of his own. As between plaintiff and defendant, the pre-existing indebtedness aforesaid, was a valuable consideration for. the execution of the notes sued on. Bank v. Frame, 112 Mo. 510; Brooks v. Owen, 112 Mo. 267; Hoyt v. Oliver, 59 Mo. 189; Rhodes v. Outcalt, 48 Mo. 369; 1 Jones on Mortgages (5 Ed.), secs. 460 and 611; Story on Promissory Notes (7

Cox v. Sloan.

Ed.), sec. 195, p. 255; Meyer v. Evans, 66 Ia. 183; Bank v. Chisholm, 71 Ia. 679; McLaughlin v. Ward, 77 Ind. 386; Evans, Adm. v. Pence, 78 Ind. 440; Hewitt v. Powers, 84 Ind. 297; Turner v. McFee, 61 Ala. 472; Cromelin v. McCauley, 67 Ala. 548; Prior v. White, 12 Ill. 263; Paine v. Benton, 32 Wis. 497; Moore v. Fuller, 6 Ore. 275; Laubenheimer v. McDermott, 5 Mont. 515; Usina v. Wilder, 58 Ga. 179; Saunderson v. Broadwell, 82 Cal. 133; Busey v. Reese, 38 Md. 270; Dixon v. Dixon, 31 Vt. 455.    (3) There is no claim in the record, nor was any testimony offered, tending to show, that when the collateral notes were turned over by Creighton Bank, to Kansas City State Bank, the latter was directed to credit the collateral notes thus collected, on any particular indebtedness due from the Creighton Bank, to said Kansas City State Bank.    Under the law, therefore, the Kansas City State Bank had the right to indorse the collections from said collaterals, upon any indebtedness due it from said Creighton Bank.    2 Brandt on Suretyship and Guaranty (2 Ed.), sec. 330; Brown v. Brown, 124 Mo. 83; Beck v. Haas, 111 Mo. 268; Gantner v. Kemper, 58 Mo. 570; Waterman v. Younger, 49 Mo. 415; Middleton v. Frame, 21 Mo. 414; Brady's Adm'r. v. Hill, 1 Mo. 315; Poulson v. Collier, 18 Mo. App. 607; Shortridge v. Pardee, 2 Mo. App. 365; Bank of Cal. v. Webb, 94 N. Y. 471; Field v. Holland, 6 Cranch 8; Stone v. Seymour, 15 Wend. 29; Pelzer R. & Co. v. Steadman, 22 S. C. 279.

*J. T. Burney* and *R. H. Field* for respondent.

(1) Though a jury had been waived in this case, and the trial was by the court without a jury, the evidence showed, or tended to show, complete defenses to the notes sued on. (Lack of consideration and fraud.)    The defendant was therefore entitled to have such evidence on these issues submitted to and

considered by the court in its capacity as a jury, so that this court could determine whether the trial court considered these issues and applied correct principles of law. Krider v. Milner, 99 Mo. 145; Harbison v. School Dist.; 89 Mo. 184. The notes sued on were accompanied by a collateral contract signed by both plaintiff and defendant expressing the consideration and purpose of the notes sued on. (2) This contract was, as between plaintiff and defendant, just as much a part of the notes sued on as if it had been written out therein. Railroad v. Atkison, 17 Mo. App. 494. It was the indebtedness of the Farmers' and Merchants' Bank of Creighton, and not the indebtedness or liability of the defendant, that was intended to be secured by the notes sued on, and the deed of trust securing the same. Hence all reference in the declarations of law (given at request of plaintiff) and in the discussion here as to defendant's liability as a surety on the $9,000 and $12,000 notes of the Creighton Bank, being a sufficient consideration for the notes sued on, is untrue and irrelevant. The liability of the defendant as a surety in the notes sued on, "is not to be extended by implication but confined to the exact letter of the undertaking." "There is no construction, no equity against sureties." Baer v. Cubane, 105 Mo. 120; Harrisonville v. Porter, 76 Mo. 358; Prior v. Kiso, 81 Mo. 249; Orrick v. Vahey, 49 Mo. 431. Under the authorities cited it is certainly not permissible to uphold the notes sued on as security for the defendant's contingent liability on the Creighton Bank notes, when his liability was not the consideration for the notes sued on, but it was the indebtedness of the Creighton Bank that they were intended to secure. This contract implying that the notes sued on were executed for a past indebtedness of the Creighton Bank (not that of the defendant) and expressing no agreement on the part of the Kansas City State Bank to extend the time for the payment of the same, it is not permissible to vary the agreement, or to add

thereto under the guise of proving or finding an additional consideration for the notes sued on. Galbraith v. Stewart & Co., 30 Ark. 418; Brown v. Morgan, 56 Mo. App. 381; Mc-Cleod v. Skiles, 81 Mo. 595; Morgan v. Porter, 103 Mo. 135; Squire v. Evans, 127 Mo. 518; Gillet v. Bank of America, 55 N. E. Rep. 292; Foerderer v. Moors, 91 Fed. Rep. 476. (3) These July renewal notes having been delivered to the Kansas City State Bank several days prior to the 16th day of July, 1895 (date of the notes sued on) and the Kansas City State Bank having kept and held them without a redelivery thereof by the makers after the notes sued on were executed they (the July renewal notes) can not be made the basis of a consideration for the notes sued on. Stagg v. Linnenfelser, 59 Mo. 336; Williams v. Williams, 67 Mo. 662; McFarland v. Heim, 122 Mo. 327; Ring v. Kelly, 10 Mo. App. 411; Messenger v. Vaughn, 45 Mo. App. 15. (4) A surety, before he can be bound by the obligation he signs has a right to know the consideration therefor. If he is misled as to the consideration, or the consideration for his obligation be concealed from him, his obligation is void. This is the law even if there was no fraud intended and none practiced by the plaintiff in obtaining the notes sued on. Ellis v. Clark, 110 Mass. 392; Railton v. Matthews, 10 Clark & Finnelly (Eng.) 943; Ober-beck v. Mayer, 59 Mo. App. 298; McMahan v. Geiger, 73 Mo. 150; Pidcock v. Bishop, 3 B. & C. (Eng.) 612. The facts and circumstances pointed out as showing defendant's understanding of the matter in signing the notes sued on were competent evidence in this case. Ellis v. Harrison, 104 Mo. 270; Skinker v. Haagsman, 99 Mo. 208; Oberbeck v. Mayer, 59 Mo. App. 289; Field v. Liverman, 17 Mo. 218; Smalley v. Hale, 37 Mo. 104. (5) It is wholly immaterial whether the "Wallis notes represented the individual indebtedness of the Wallises or real debts of the Creighton Bank, if at and before the execution the note sued on there was an express or

implied agreement between the agent of the Kansas City State Bank and D. B. Wallis, that the Kansas City State Bank would renew or extend both lines of said indebtedness, to-wit, that represented in the notes signed on their face by the Creighton Bank and on the back by the defendant and the other directors of that bank, and that represented in "the Wallis notes." The notes sued on were void unless the defendant then knew of such agreement and consideration and every part of such understanding, or the same was made known to him at or before the execution of said notes. *Suppresio veri est suggestio falsi*. Stephens v. Spires, 25 Mo. 390; Howard v. Jones, 10 Mo. App. 81; Pratt v. Hedden, 121 Mass. 116; Pidcock v. Bishop, 3 B. & C. (Eng.) 611; Lee v. Jones, 14 Common Bench (new series) 386; Railton v. Matthews, 10 Clark & Finnelly (Eng.) 934; Gano v. Bank of Kentucky, 45 S. W. Rep. 519; Graves v. Lebanon Bank, 10 Bush (Ky.) 24; Powers Dry Goods Co. v. Harlin, 68 Minn. 193; American Surety Co. v. Pauley, 170 U. S. 154; 2 Kents' Com., side page 483.

MARSHALL, J.—This is a suit on two promissory notes for six and four thousand dollars respectively, executed by the defendant to the order of the plaintiff, on July 16, 1895, with eight per cent interest from maturity.

The answer admits the execution of the notes, pleads want of consideration, and avers that on July 16, 1895, the Farmers' & Merchants' Bank of Creighton, was indebted to the Kansas City State Bank in the sum of $21,000, evidenced by two notes for $12,000 and $9,000 respectively, which were indorsed by the seven directors, among them the defendant, of the Creighton bank, and that the notes sued on were executed by the defendant to the plaintiff as additional collateral security for the $12,000 and $9,000 notes and for no other

Vol. 158 mo—27

consideration, and were made long after said notes last aforesaid and after the consideration therefor had passed; that if there was any other consideration for the notes in suit, it was not known by the defendant, but was purposely concealed from him when those notes were obtained from him; charges that the Kansas City State Bank received from the Creighton bank notes of the face value of more than $50,000 as collateral security for the $12,000 and $9,000 notes, of which it has collected $18,000 and asks to have that credited on those notes; and asks that an accounting be had as to the amount collected of said collateral, and that the sum collected be applied as a credit on the $12,000 and $9,000 notes.

The reply is a general denial.

The case was tried before the court, but whether as a court of law or as a court of equity the parties are disagreed. The plaintiff offered the notes in evidence and then rested. The further facts which are in this record are as follows: The Creighton bank was organized in 1888, and since 1889 the defendant Sloan has been its president, D. B. Wallis its cashier, and I. B. Wallis its assistant cashier. The plaintiff during that time has been the president of the Kansas City State Bank, and F. C. Adams the treasurer thereof. The only correspondent the Creighton Bank has had since 1889 was the Kansas City State Bank. During all that time the business of the Creighton bank has been done almost exclusively by the cashier D. B. Wallis, the other officers and directors paying practically no attention to the business of the bank. The Creighton bank became a borrower from the Kansas City State Bank almost from the beginning, and on December 30, 1893, the former bank owed the latter $37,598.24, of which $14,598.24 was an overdraft, which was unsecured, and the balance was secured by the individual note of cashier Wallis for $20,000, dated September 16, 1893, and that note was secured by a deed of trust on four hundred acres of land.

The Kansas City State Bank was dissatisfied with this status of affairs, and it was agreed that to cover the overdraft the two Wallises should each execute two joint and several notes for $7,500 each, to the order of the Kansas City State Bank, and the Creighton bank should before the delivery thereof sign its name on the reverse side thereof, which being done, the proceeds, amounting to $14,890, were placed to the credit of the Creighton bank by the Kansas City State Bank, thereby wiping out the overdraft of $14,598.24, and leaving a credit of $276.49 to the Creighton bank. The remainder of the indebtedness of the Creighton bank to the Kansas City State Bank, was evidenced and secured by a note or notes of the Creighton bank, indorsed by the seven directors, so that on the 1st of July, 1895, this indebtedness, amounting to $22,000, was evidenced by two notes for $12,000 and $10,000 respectively, which fell due at about that date, and which are the notes referred to in the answer as the notes for which the notes in suit were given as collateral security, the $10,000 note however being referred to as a $9,000 note, but this arises from the fact that shortly thereafter there was a payment of $1,000 made on the $10,000 note, and so, all through the case it is referred to as a $9,000 note, and it will be so referred to hereinafter. When these two notes fell due, July 1, 1895, or shortly afterwards, the Creighton bank sent renewal notes therefor as it had been doing for several years previously, but instead of accepting them, Adams, the assistant cashier of the Kansas City State Bank, took all the notes, old and new, and went to Creighton, and told Wallis the cashier of the Creighton bank, that his bank was not willing to renew the $12,000 and $9,000 notes unless it got more collateral security. At that date the two Wallis notes of $7,500 each, had been reduced to $5,500 each by a payment on June 28, 1894, by the Creighton bank of $4,000, of which $2,000 was applied on each (and thereafter on July 17, 1895, there was a further

payment of $1,000 thereon by the Creighton bank, so that those notes are referred to as the two Wallis $5,000 notes.) On the 15th of July, Wallis went out to see the defendant about the difficulty, and upon his return reported that the defendant would not obligate himself further in the matter. On July 16th, Adams went out to see the defendant, and according to Adams's testimony showed him the *four* notes, to-wit, the $12,000, the $9,000 (then $10,000) and the two Wallis notes for $5,500 each, which aggregated at that date $33,000, but according to the defendant's testimony Adams showed him only the $12,000 and the $9,000 (then $10,000) notes, and according to Adams' testimony he told the defendant the Kansas City State Bank would not renew those unless it got more security, but according to defendant's testimony Adams simply said his bank must have more collateral security and did not make the renewal of those notes depend upon getting more security. However, the conference resulted in the defendant executing the $6,000 and $4,000 notes in suit, and securing them by a deed of trust on certain lands of the defendant. Adams agreed not to put the deed of trust on record at once, and on the 17th the $12,000 and $10,000 notes were renewed and the old notes cancelled. When Wallis returned from his visit to defendant on the 15th he brought Adams the following note from defendant.

"7, 15, '95.

"F. C. Adams,

Dear Sir: Mr. Wallis can give you a list of my land. I have no mortgages against any of it. You hold our notes signed individually, and you have collateral notes, Mr. W. says, to the $30,000. I don't think it advisable to mortgage my land, as records would show it, and it would be against our business. We can pay off gradually at least $1,000 per month.                               S. A. Sloan."

At the time the defendant executed the notes in suit,

with the deed of trust securing them, Adams, for plaintiff, and the defendant made the following written contract:

"Whereas, the undersigned, S. A. Sloan, has executed and delivered to Wiley O. Cox, trustee, his certain two promissory notes in the sum of $4,000 and $6,000 respectively, dated Kansas City, Missouri, July 16, 1895, and payable at the Kansas City State Bank, in said city, on or before six months after their date, with interest from its maturity at the rate of eight per cent per annum, secured by deeds of trust on certain lands in Cass and Henry counties, Missouri (for a more particular description of which reference is hereby made to said deeds of trust of even date herewith). It is hereby agreed between said S. A. Sloan and Wiley O. Cox, trustee, that said notes have been executed and delivered to said Cox, who is the president of said Kansas City State Bank, as agent and trustee for said Kansas City State Bank, and as collateral security, for the indebtedness of the Farmers' & Merchants' Bank, of Creighton, Missouri, to said Kansas City State Bank, the said S. A. Sloan, being desirous to secure the indebtedness of the said Creighton bank; and it is further agreed by said S. A. Sloan that said Kansas City State Bank may at any time change the form of indebtedness to it from said Farmers' & Merchants' Bank, and may from time to time extend the payment thereof, or any part thereof, without in any manner affecting or releasing or discharging the said security as collateral to said indebtedness and every part thereof, notice of such changes, extensions or any other dealings between said banks being hereby expressly waived.

"In duplicate this 16th day of July, 1895.

"S. A. Sloan,

"W. O. Cox, Trustee, Per F. C. Adams."

The defendant claims that he knew nothing of the two Wallis notes, and did not intend the notes in suit to be collateral security for anything except the $12,000 and the

$9,000, and his counsel explains his reference to $30,000 in his note of July 15th to Adams, by saying it referred to collateral notes which the Kansas City bank held to secure the $12,000 and $9,000 notes, but in his testimony the defendant says: "The last thing I remember, I believe, of saying to Mr. Adams in regard to the business, was, I asked him how much the boys owed him in all, and he said $31,000 or thereabouts; I think that was about all that was said."

On July 16, 1895, the Kansas City State Bank had collateral notes amounting to $34,581.57 which had been transferred to it by the Creighton bank as security for what the latter owed the former. It afterwards collected $13,147.31 of this collateral, which it applied in this manner:

Interest on $12,000 note to January 8, 1897....$  1,125.33
Interest on $9,000 note to January 5, 1897......     904.00
Payment of one Wallis note September 15, 1896..   5,377.77
Part payment of other Wallis note September 15,
    1896 ..............  ....  ............   5,014.30

Total ........  ...... .........  ...  ..$12,421.40

Deducting this $12,421.40 from the $13,147.31 collected from said collaterals, leaves a balance of $725.21, which up to the date of the trial had not been applied in any way. There is no evidence as to any agreement of the parties as to how payments or collections from collaterals should be applied, nor of any directions by the creditor bank or any of its officers or by defendant as to how such funds should be applied. The evidence shows that the Kansas City State Bank treated it all as the indebtedness of the Creighton bank and made the application of the money received and collected in the manner above stated.

The circuit court found that the notes sued on were founded upon a good and sufficient consideration, but that

they were collateral security for the $12,000 and $9,000 notes alone, and also found that the Kansas City bank held the two Wallis notes aforesaid, but without finding that they were collaterals held for the $12,000 and $9,000 notes alone, or that the Creighton bank or any one else had directed that the collection should be applied on the $12,000 and $9,000 notes, the court took off those credits from the Wallis notes and applied them on the $12,000 and $9,000 notes, and after doing so found that there was a balance due thereon of only $4,546.83 and gave judgment for plaintiff for that sum, apportioning $1,818.75 to the $6,000 note and $2,728.12 to the $4,000. From this judgment the plaintiff appealed.

Three principal questions are involved in this case, to-wit: First. Was there a sufficient consideration to support the notes sued on? Second. Whose indebtedness did the Wallis notes represent? Third. How must the proceeds of the collaterals be applied? Of these questions in their order.

## I.

Was there a sufficient consideration to support the notes sued on?

The notes are negotiable in form and therefore *prima facie* import a valuable consideration. [Sec. 733, R. S. 1889; Taylor v. Newman, 77 Mo. 1. c. 263; 1 Daniel on Neg. Inst., sec. 161.] To overcome this it was necessary for the defendant, as he did, to affirmatively plead want of consideration and to support this plea by competent proof. This the defendant claims he did by showing that the notes were executed and delivered as additional collateral security for the $12,000 and $9,000 notes, and that the consideration for those notes had passed before the notes in suit were made and hence there was no consideration for those notes. This contention would be well founded if the facts were as assumed, but

the contention falls short of stating the whole facts, in this, that while it is true the Kansas City State Bank held a $12,000 and a $9,000 note made by the Creighton bank and signed on the back by the seven directors of that bank, the defendant among the number, which notes were renewal notes given for other notes originally given to secure that amount of money previously loaned by the Kansas City State Bank to the Creighton bank, still those notes were past due; and the makers thereof wanted an extension of time and offered new notes of similar character for the same amount therefor, and the Kansas City State Bank was unwilling to grant the extension unless it got further security. To accomplish this Adams, the assistant cashier of the Kansas City State Bank, went to Creighton on the 15th day of July and so informed the cashier of the Creighton bank, who laid the matter before the defendant, and at first he refused to give any further security, as his note of July 15th to Adams, above set out, shows, but on the 16th of July, when Adams saw him and they canvassed the situation, and Adams made it plain to him that the Kansas City State Bank would not renew the notes or carry the Creighton bank any longer, and when the possible failure of the Creighton bank stared the defendant, its president, in the face he changed his mind and made the notes in suit and secured them by a deed of trust on his land. This extension was a valuable consideration and is sufficient to support the notes. "A valuable consideration is a benefit to the party promising, or to a third person at his request, or an inconvenience, loss, or injury, or the risk of it to the party promised." 4 Minor's Institutes of Common and Stat. Law, Part I, p. 16, 3c. The extension of time was a benefit to the party promising, the defendant, because he was a party to the notes extended and was a stockholder of and depositor in the Creighton bank and would be injuriously affected by its failure. It was also a benefit to the Creighton bank, conferred

Cox v. Sloan.

at his request. It was also a risk to the party promised, the Kansas City State Bank. So that all the requisite tests of a valuable consideration are fulfilled in this case. Daniel on Negotiable Instruments (4 Ed.), vol. I, sec. 185, states the rule thus: "There is no doubt that a debt due from a third person, as a debt from A. to B., is a good consideration for a note as from D. to B., provided there were an express agreement for delay, or an implied agreement which would arise if the debt were then due, and the note were made payable at a future day." This doctrine applies with full force to the facts of this case.

But aside from that the debt to be extended was as much the debt of the defendant as it was of the Creighton bank, for though the note was signed on its face by the Creighton bank, and payable to the order of the Kansas City State Bank, it was signed on the back thereof by the defendant and his co-directors, and he and they were as much makers of the note as their bank was. [Kingman & Co. v. Cornell--Tebbetts Machine & Buggy Co., 150 Mo. l. c. 301.] Such being the case the notes in suit were founded upon a valuable consideration. "There is no doubt that a pre-existing debt of the drawer, maker, or acceptor is a valid consideration for his drawing or accepting a bill or executing a note, and indeed is as frequently the consideration of negotiable paper as a debt contracted at the time." [1 Daniel on Neg. Inst. (4 Ed.), sec. 184.]

The defendant, however, says that these facts can not be considered in this case because when these notes were made he and Adams acting for the plaintiff entered into the written contract hereinbefore fully set out, by which it was agreed that these notes were executed as collateral security for a pre-existing debt of the bank, and hence the terms of the written instrument can not be enlarged by parol. This contention must be held untenable, for two reasons: first, because the indebted-

ness to be further secured by these notes was as much the indebtedness of the defendant as of the bank; and, second, because the parol testimony explanatory of and establishing the purpose and character of these notes, was introduced by the defendant himself. Adams was called as a witness for the defendant and his counsel elicited from him all the facts, circumstances, talk, purposes, arrangements and contracts relating to the whole business between the two banks and to the execution of these notes, and his counsel also offered in evidence all the notes, contracts, deeds of trust and the entries on the books of the Kansas City State Bank bearing upon all such matters. It does not therefore lie in the mouth of defendant to say that the evidence he introduced was inadmissible. It must all be considered together under these circumstances and so considered there can not be any doubt that the notes in suit are supported by a valuable consideration.

## II.

Whose indebtedness did the Wallis note represent?

There is no conflict in the testimony as to the history of the Wallis notes. The evidence on this subject was supplied by the defendant and the plaintiff introduced no countervailing testimony. It stands conceded that on December 30, 1893, the Creighton bank owed the Kansas City State Bank $37,598.24, of which $14,598.24 was overdrafts drawn during the year 1893, and that to secure this overdraft two notes for $7,500 each were made to the order of the Kansas City State Bank. These notes were the joint and several notes of the two Wallises and the name of the Creighton bank was written on the back thereof before delivery. That bank was therefore a joint maker, at the option of the payee. [Kingman v. C. T. M. & B. Co., 150 Mo. l. c. 301.] So far, therefore, as the Creighton bank is concerned, the case is no different from what it would have been if it had executed its own note

to the Kansas City State Bank to cover the overdraft.    There
was no *novation*, for the liability of the original debtor was
preserved, and the security of the creditor was simply aug-
mented by the addition of the liability of the two Wallises.
*Quoad* the Creighton bank, the form of the liability and the
evidence thereof were changed but the liability remained the
same.    The debt evidenced and secured by these two notes,
called for convenience the Wallis notes, was the debt of the
Creighton bank.    There was no consideration moving to the
Wallises except the extension to the Creighton bank to pay the
overdraft then due, and this we have seen is a sufficient con-
sideration to bind them.

### III.

How must the proceeds of the callaterals be applied?
The Kansas City State bank held on July 16, 1895, when
the notes in suit were executed, collateral notes transferred to
it by the Creighton bank amounting to $34,581.57.    After
that date it collected $13,147.31 of such collaterals, and ap-
plied $2,029.33 to the payment of the interest on these
$12,000 and $9,000 notes, and $10,392.07 on the two Wallis
notes, and at the time of the trial had $725.21, which it had
not applied at all.    The circuit court took the credits off of
the Wallis notes, and applied the total part payments and
collateral collections on to the $12,000 and $9,000 notes and
found there was a balance due on those notes of only
$4,546.88 and without specifically finding that the notes in
suit were to be collateral security for the $12,000 and $9,000
notes and not for the two Wallis notes, gave judgment on these
notes for an amount equal to the balance found due on the
$12,000 and $9,000 notes.    This was error for two reasons.

*First.*    Because the notes in suit were executed as col-
lateral security for *all* the indebtedness of the Creighton bank

to the Kansas City State Bank, and not simply as collateral security for the $12,000 and $9,000 notes.   This is shown not only by the fact that the agreement between defendant and Adams acting for plaintiff, so states, but because defendant's letter of July 15th to Adams shows the Creighton bank owed $30,000, not merely $21,000, the sum of $12,000 and $9,000 notes, but by the defendant's own testimony (whatever else he may have said about not knowing of the Wallis notes at that time), that the last thing he said to Adams in regard to this business was to ask him how much the boys owed him in all, and he said about $31,000 or thereabouts.   This could not have been without taking the Wallis notes into account, and the defendant must have known they were included, else he would not have been satisfied to accept Adams's statement that the indebtedness was $30,000 when the $12,000 and $9,000 notes only aggregated $21,000.   So that if the notes in suit were given as collateral security for all the Creighton bank owed the Kansas City State Bank which included the Wallis notes as hereinbefore found, then the total payments and collections from collaterals, which amounted only to $18,147.31 (which includes the $15,000 paid on the Wallis notes) would leave the bank's indebtedness $19,450.93 (without including interest), after deducting all payments and collections, and as these notes were collateral for the whole indebtedness and as the balance of the whole indebtedness exceeded the amount of these notes the judgment should have been for the whole amount claimed.

*Second.*   Because there is not one word of evidence in the case that the Creighton bank transferred the collaterals to the Kansas City State Bank  as security for the $12,000 and $9,000 notes alone, but the evidence is that they were security for the whole indebtedness, and, further, there is absolutely no evidence that the Creighton bank or any of its officers or the defendant ever directed the application of the

partial payments or the proceeds of the collateral collections. And in the absence of such directions the Kansas City State Bank had the right to apply the payments as it saw fit, especially as all of the Creighton bank's indebtedness to it stood upon the same plane. [Brown v. Brown, 124 Mo. l. c. 83; Beck v. Haas, 111 Mo. l. c. 269.] So that when the part payments and collateral collections were applied by the Kansas City State Bank in payment of the interest on the $12,000 and $9,000 notes, and in the extinguishment of the Wallis notes, there remained only $725.21 to apply on the $12,000 and $9,000 notes which left a balance due thereon of $20,274.79 with interest, which was in excess of the sum of the two notes sued on, and hence the plaintiff was entitled to judgment for the whole amount.

The parties are not agreed as to whether this is an action at law or converted into one in equity by the answer. The relief sought as to the accounting converted the case into a proceeding in equity, and the relief granted was only such as a court of equity had power to grant. [Dunn v. McCoy, 150 Mo. l. c. 561; Martin v. Turnbaugh, 54 S. W. 516.] It is not very material which view is taken of this case on this appeal, as there is no essential conflict in the evidence and the facts being conceded, it is the duty of this court to administer the true law. Properly speaking, however, the case was converted into a proceeding in equity by the answer.

These conclusions make it unnecessary to consider the alleged errors in the instructions, or to pass on the other questions so ably presented in the briefs of counsel.

The judgment of the circuit court is reversed and the cause remanded to that court with directions to set aside its decree and to enter a judgment for the plaintiff for the full amount of the two notes here in suit, with interest from January 8, 1897, the date up to which the interest has been paid on the $12,000 and $9,000 notes. All concur.