WALTER HIGBEE v. MARY E. BILLICK, M. E. LASLEY, W. N. LASLEY and LOGAN'S BANK, Appellants.

**Division One, June 29, 1912.**

1. **ADMINISTRATOR'S SALE: Right of Heir to Set Aside and Redeem: Equity.** An heir, as such, cannot, as a matter of course, set aside a regular administrator's sale of land or redeem. The right of the heir to set aside or redeem, if at all, arises not from his heirship, but because of fraud or some irregularity or untoward incident, under some recognized head of general equity jurisdiction.

2. ———: **Collateral Attack.** An administrator's sale, duly approved and allowed to rest unappealed from, cannot be attacked collaterally. The same presumptions attending judgments of courts of general jurisdiction attend it—among them that the court proceeded by right, and not by wrong.

3. ————: **Debts of Intestate.** Title to real estate is cast by descent on the heir on the death of his ancestor burdened with the paramount right of the ancestor's creditors to have their debts paid—the creditor's right to payment being in the nature of a lien.

4. ————: **Principal and Agent: Scope of Authority: As Affecting Others.** Whether or not the husband as his wife's agent wronged the wife by transcending the bounds of his agency, is not open for consideration, in a suit to determine whether the purchaser at an administrator's sale took the title to lots owned by her father, or whether a deed of trust to secure a debt due her from her father, which her husband as assignee of the note had released, is still in force, the issue being between her and such purchaser.

5. ————: ————: ————: **Release of Deed of Trust: Sale Thereafter: Right of Purchaser.** The holder of a note given by her deceased father and secured by a deed of trust on his lots, indorsed the note by general indorsement over to her husband, and delivered to him a general warranty deed conveying the lots to a prospective purchaser and reciting the property was free from incumbrances, and the husband took them to the recorder's office, released the deed of trust on the margin as assignee, received $175 from the purchaser and three notes for $325 secured by a deed of trust on the lots, and in her name entered into a contract whereby the notes were to remain in a bank until it was ascertained that all the debts against the wife's father's estate were paid. Thereafter the lots were sold, by regular proceedings, by her father's administrator, to plaintiff, who bought with no knowledge except what the public records showed. *Held*, that her husband was the general agent of the wife to close out the transaction, and the released deed of trust cannot be revived, but the plaintiff took the title at the administrator's sale.

6. ————: ————: ————: ————: **Ratification.** Furthermore, the wife, by receiving the $175 paid to her husband at the time he released the deed of trust, ratified his act, and ratification means to authorize, and to ratify estops.

7. ————: ————: ————: ————: **By Assignee: Apparent General Authority.** Where there is no written warrant of authority, but the agent has been clothed with every indicia of a general authority, and given apparent power as assignee and as apparent owner of a note, to release a deed of trust securing the payment of that note, then those dealing with the agent are not interested in the secret processes of the principal's mind, but they are interested in the character in which the agent is held out by the principal. And so when the agent, with the

note in hand, writes a release on the margin of the record where the deed of trust is recorded and signs it as assignee, and the recorder writes on the margin of the record that the note was presented and cancelled, that release was the act of the principal, whether or not the principal had in so many words given the agent power to release the mortgage.

8. ———: **Subject to Unknown Equities.** The purchaser at an administrator's sale made regularly in pursuance to an order of court does not take subject to unknown equities existing in favor of a former mortgagee whose deed of trust has been released of record by his assignee.

9. **WIFE'S NOTE: Blank Indorsement: Possession of Husband.** Where the husband did not attempt to reduce to his possession his wife's note indorsed to him in blank, but simply used it, as his agency authorized him to do, to release, as assignee, the deed of trust securing it, the question of whether a blank indorsement by a wife is a sufficient compliance with the statute to authorize him to reduce the note to his possession, is not for determination.

Appeal from Schuyler Circuit Court.—*Hon. Nat M. Shelton*, Judge.

AFFIRMED.

*Irving C. Johnson* and *Fogle & Fogle* for appellants.

(1) A mortgagor of land owns the legal title thereof, subject to the lien of the mortgagee. Dickerson v. Bridges, 147 Mo. 235. (2) The title of land of the decedent descends to his heirs, and the heirs hold the legal title to the land of the decedent, subject to be defeated by the sale of his administrator for the payment of his debts. Kane v. Railroad, 112 Mo. 34. (3) When the administrator sells land belonging to the estate of the decedent, he conveys to the purchaser, by his administrator's deed, all the right, title and interest which the deceased had in such real estate at the time of his death. Sec. 172, R. S. 1899; Aubuchon v. Aubuchon, 133 Mo. 260; Howell v. Jump, 140 Mo. 452. (4) The rule of *caveat emptor* applies to all pur-

chasers at administrator's sales of the lands of the decedent. Foley v. Boulware, 86 Mo. App. 672. (5) The purchaser at an administrator's sale takes only such title as a decedent had at the time of his death. Shields v. Ashley, 16 Mo. 471. (6) Every instrument in writing that conveys any real estate or whereby any real estate may be affected in law or in equity, proved or acknowledged and certified in the manner herein before prescribed and recorded, shall from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof, and all subsequent purchasers and mortgagees, shall be deemed in law and equity to purchase with notice thereof. Secs. 923, 924, R. S. 1899. (7) The plaintiff had constructive notice of the entire transaction between Billick, Magee and the Lasleys. He knew that the Magee debt of $382, secured by deed of trust, existed at the time of the death of Magee. He knew that it was entered satisfied on August 29, 1906. He knew that the $325 debt to Mary E. Billick, was a continuation of the $382 debt. He knew that the Lasley deed of trust to secure the same was filed and recorded on August 29, 1906. He knew that the deed from the Magee heirs to Lasley was filed and recorded on August 29, 1906. He knew that this constituted one transaction. All of this he knew before he purchased at the administrator's sale on May 4, 1908. (8) He had actual notice of the entire transaction, given to him by Lasleys. (9) The indorsement of a promissory note belonging to the wife by her to her husband, does not authorize him to encumber or otherwise dispose of the same for his own use and benefit, as provided by Sec. 4340, R. S. 1899. 151 Mo. 416; 81 Mo. App. 9; 157 Mo. 402; 108 Mo. 403. (10) A deed of release executed by the trustee in the deed of trust without the authority of the cestui que trust and without having received payment of the secured notes, does not discharge the lien. Lakenan v. Roberts, 9 Mo. App. 179; Joerdens v. Schrimpf, 77 Mo. 383;

Lanier v. McIntosh, 117 Mo. 508. (11) An entry of satisfaction of a deed of trust on the margin of the record thereof, by one claiming to be assignee of the deed and note secured thereby, but who is in fact a stranger thereto, and not in possession thereof, is void. DeLaureal v. Kemper, 9 Mo. App. 77. (12) An entry of satisfaction on the margin of the record, except in giving notice, occupies no higher ground than an` unrecorded release; a direct proceeding to set it aside is not necessary. Valle v. I. M. Co., 27 Mo. 455. (13) Where defendant was beneficiary of honest deeds of trust, and on the surrender of the notes to the mortgagor, the mortgagor gave him a warranty deed to the land, and thereupon the *cestui que trust* entered satisfaction on the margin of the record, in the belief that the deeds of trust became merged in the warranty deed, and the warranty deed became subsequently set aside for having been made in fraud of creditors, the deeds of trust were not thereby set aside too, but on proper proceeding the satisfaction thereof will be set aside. Martin v. Turnbaugh, 153 Mo. 172. (14) The three notes described in plaintiff's petition and introduced in the evidence as defendant's exhibit "D" were never delivered to the payee M. E. Billick and are therefore void and as they are void the deed of trust given to secure them is also void. 7 Cyc. 683, n. 58; Carter v. McClintock, 29 Mo. 464; State v. Stebbins, 132 Mo. 338; Fogg v. School District, 75 Mo. App. 169.

*Higbee & Mills* for respondent.

(1) Mrs. Billick was a *feme sole* as to her note. By her duly appointed agent she produced her note, indorsed by her, to the recorder of deeds, and released her deed of trust in proper form. Her husband was her agent in this matter and she is bound by his act. (2) Having authorized her husband to release her deed of trust, she is estopped to question his act as against third

parties. She accepted and retained the $175 and Mrs. Lasley's notes, and cannot after a sale of the lots by the public administrator, her deed of trust having been released for two years, repudiate the act of her agent done within the line of his apparent authority and so acquiesced in by her. Stone v. Bank, 81 Mo. App. 16; Tennant v. Ins. Co., 133 Mo. App. 360; Leet v. Bank, 115 Mo. 203; Rannells v. Gerner, 80 Mo. 483; Cottrell v. Spiess, 23 Mo. App. 35. (3) The lots were regularly sold at public auction by the public administrator. The sale was reported and approved, and no appeal was taken from its approval. It is res adjudicata and not subject to collateral attack. Sec. 173, R. S. 1909; Johnson v. Beazley, 65 Mo. 253; Rogers v. Johnson, 125 Mo. 215; Noland v. Barnett, 122 Mo. 181; Robins v. Boulware, 190 Mo. 43. (4) There was abundant evidence to sustain the finding of the trial court, and the judgment should not be disturbed. The recitals in the administrator's deed after the sale was approved, are conclusive. Bray v. Adams, 114 Mo. 491. (5) There is no merit in the contention that plaintiff purchased merely the interest of the deceased in the lots, subject to Mrs. Billick's mortgage. He bought the interest shown by the record, which is the fee. Waldo v. Russell, 5 Mo. 387; Draper v. Bryson, 26 Mo. 108; Vance v. Corrigan, 78 Mo. 95; Grant v. Hathaway, 215 Mo. 147. (6) Appellant says plaintiff knew the Lasley notes for $325 were taken in lieu of her $382 note. There is no foundation for this assertion; if there were, the conclusion sought to be drawn would be a non sequitur. Such result could be reached only in a clear case of pure equity. Indeed it is like a case of subrogation; she must have superior equities. 37 Cyc. 371.

LAMM, J.—From a decree for plaintiff clearing up and quieting the title to two lots, defendant Mary E. Billick appeals. The case is this:

William MaGee died intestate in January, 1906, a resident of Schuyler county, seized of lots three and four in block twenty-nine in the village of Glenwood, leaving three children, one, the defendant Mary E., intermarried with Martin L. Billick. Plaintiff contends that the MaGee estate was insolvent; the record does not disclose so much as that, but does disclose that it was indebted—the extent is left dark. The Billicks live in Iowa. The value of the lots was small. At the death of her father, Mary E. Billick held a small note against him dated in the November prior to his death and secured by a deed of trust on the lots.

In August, 1906, the MaGee heirs sold and conveyed these lots to Martha E. Lasley by a warranty deed, put of record, covenanting against incumbrances and with other usual covenants. At that time there had been no administration on the MaGee estate and no administrator in charge. The plan of consummating this sale was as follows:

A deed was executed by the MaGee heirs to Mrs. Lasley, and Martin L. Billick appeared on the scene, as we understand it, with this deed and with his wife's said note duly indorsed over to him by a general indorsement, to close the transaction. He did so by satisfying the record of the deed of trust on the margin as assignee of the note—the entry reading: "The debt mentioned in the within deed of trust, having been fully paid and discharged, I hereby acknowledge satisfaction in full and release the property herein conveyed from the lien and encumbrance therein, this 29th day of August, 1906. (Signed.) M. L. Billick, assignee of beneficiary. Attest: Thos. L. Buford, Recorder, by Florence Dobbins, Deputy."

At the same time on the margin of the same record the following entry was placed. "The note secured by the within deed of trust was produced and cancelled

in my presence this 29th day of August, 1906. (Signed.) Thos. L. Buford, Recorder, by Florence Dobbins, Deputy.''

Mrs. Lasley paid Billick $175 in cash and executed a deed of trust, in which her husband joined, to secure $325, evidenced by three notes signed by them, all bearing date August 30, 1906; one, for $100 due in one year; another, for $100 due in two years; another, for $125 due in three years—all payable to Mary E. Billick at Logan's Bank, Glenwood, and bearing seven per cent interest after date. Referring to the deed of trust securing said notes, it bore date August 29, 1906, and conveyed the two lots to Spencer, trustee of Mary E. Billick, and the same was spread of record. The notes were put in Logan's Bank, Glenwood, together with the following contract:

This contract witnesseth:

That M. E. Lasley has this day bought of the heirs of Wm. MaGee, deceased, lots 3 and 4 and in block 29 in Glenwood. Mo., paying one hundred and seventy-five dollars ($175) down and executing notes and mortgage for the balance of $325, and it is agreed and understood by and between M. L. Billick on the part of the heirs and said M. E. Lasley that the notes for the deferred payments as above stated are to be placed in the hands of cashier of bank in Glenwood and to remain in his possession until it is ascertained and determined that all debts against the estate of Wm. MaGee have been paid and if the said Lasley shall be obliged to pay any debts on the MaGee estate, same may be deducted from the balance or amount of the purchase money notes to be left in said bank.

Dated this 29th day of August, 1906.

M. L. BILLICK,

M. E. LASLEY,

By W. N. LASLEY.

Afterwards, in 1908, the estate of William MaGee was put in charge of the public administrator of Schuyler county. It does not appear directly at whose instance the administration was had, whether of creditors or of heirs or whether the public administrator moved, or the probate court *ex mero motu*. It does appear that the Lasleys ineffectually objected to an order of sale, and that Mr. Fogle, of counsel at present for Mrs. Billick, represented either the administrator or the creditors or the heirs in supporting a sale. Some stress is laid upon the appearance of plaintiff as attorney for the Lasleys in opposition to the order of sale, on one side, and on the fact that Mr. Fogle, who got the order of sale for the administrator, is now contending that the administrator's sale did not pass a title clear of MaGee's deed of trust, on the other. But we will not pursue the matter, for the respective contentions pro and con on that head smack of being makeweights, therefore beside the merits. Such debts were allowed against the estate and such proceedings taken in the probate court as resulted in an administrator's sale of the lots to Mr. Mills at public sale. Mills then and there turned his bid over to Mr. Higbee. Thereafter the administrator made due report of sale to pay debts, which was approved by the probate court, and in June, 1908, an administrator's deed, in due form, with apt narrations, was executed to Higbee, on the payment of the Mills bid of sixty dollars.

Thereafter Higbee lodged his bill in equity in the Schuyler Circuit Court in two counts. The object and general nature of the first was to clear away the cloud of the deed of the MaGee heirs to Lasley and of Lasley's deed of trust and to cancel the notes secured thereby, plaintiff claiming a fee simple title. The second was under old section 650 to ascertain and determine the title and interest of parties litigant in and to said lots. The Lasleys, Logan's Bank and Mary E. Billick were made defendants. The form or

substance of the bill is not assailed, hence need receive no further attention.

We take it the Lasleys and the bank made no defense, but Mary E. Billick filed an answer. It admitted that MaGee died seized in fee of the lots, leaving as his only heirs the children named in the bill; admitted they conveyed to Mrs. Lasley, and that the Lasleys "executed to Mary E. Billick" the three notes described, and denied all the averments of the bill "except as above stated." It then averred that the Lasleys executed the deed of trust to Spencer, trustee, referred to in the bill; that the Lasley notes were not delivered to defendant, but were deposited in Logan's Bank in Glenwood on conditions and terms agreed to by Martin L. Billick. At this point the escrow contract, heretofore set forth (we use the word "escrow" for want of a better) is pleaded in terms. The authority of Martin L. Billick to receive the cash payment and to deliver the deed of the Lasleys is not denied or referred to in the answer, but it does deny his authority to make the escrow contract depositing the notes with the bank until MaGee's debts were ascertained. It next alleges the execution of a note by MaGee to defendant, secured by a deed of trust on the lots duly put of record the November before the January MaGee died; that Martin L. Billick was trustee in that deed of trust and that "as trustee" he, without authority, satisfied the same on August 29, 1906. Further, that said satisfaction of said deed of trust, the cancellation of the note secured thereby and the execution of the three notes by the Lasleys were severally parts of one transaction; that defendant received nothing on the note of her father, and that the Lasley notes were to take the place of her father's note. That plaintiff "had actual knowledge of all transactions above set forth at the time thereof and knew the conditions at the time thereof and also at the time he made the purchase;" and, finally, that defendant is willing to pay Higbee

back fifty dollars with the "expenses thereto attached" and deposit such other amounts as the creditors of William MaGee may be entitled to "if they have any rights over her lien . . ." The answer, as said, does not refer to the one hundred and seventy-five dollar payment and makes no tender of that. It prays the court to hold the satisfaction of her original deed of trust and the cancellation of her father's note for naught, to restore the "validity" of her deed and note, to foreclose the deed of trust, sell the lots and out of the proceeds to pay her the amount due on her original note and apply the balance as it should be applied in justice and equity.

As to the second count it is averred that defendant had a lien on the lots prior to the death of William MaGee in the form of a deed of trust executed by him to secure a loan made by her to him.

By reply plaintiff alleged the making of a warranty deed by the MaGee heirs to Mrs. Lasley wherein they covenanted that "the premises were free and clear of all encumbrances," etc.; the payment to defendant, Mary E. Billick, of $175 by the Lasleys and the execution of the three notes by them to her; that Martin L. Billick, as assignee of Mary E. Billick's original note, in the regular course of business, produced the note to the recorder, had the same cancelled, the fact entered on the margin of the record and the deed of trust securing the same satisfied by a marginal entry, attested by the recorder, which satisfaction has remained until this day with the full knowledge and acquiescence of defendant. Further replying, plaintiff set up the administration on MaGee's estate, the petition for sale to pay debts by the public administrator, the order of sale, the sale to plaintiff, its report, its approval and an administrator's deed following that approval, the purchase of the property in good faith by plaintiff relying upon the record title and that the former deed of trust had been satisfied, all of which,

it was averred, constituted an estoppel upon defendant, Mary E. Billick, barring her from asserting any right under her former deed of trust. The reply closed with a general denial.

On pleadings thus outlined the facts narrated in that part of this opinion preceding the statement of the paper issues were established at the trial. The case may proceed also on the theory that allegations of fact in the reply were established.

It may help some to give the substance of the oral testimony relating to Billick's agency. Thus: Defendant put her husband, Martin L. Billick, on the stand. He testified that the cancellation of his wife's note and his satisfaction of the deed of trust securing the same and the taking of a new deed of trust from the Lasleys with the new notes mentioned were all parts of one transaction. On inquiry by plaintiff's counsel, the record runs as follows:

"Q. Mr. Billick, for whom were you acting in this matter in taking this note and satisfying this record? A. I was acting for the party that owned the mortgage. Q. Who was it? Your wife? A. Mary E. Billick, my wife. Q. And the whole transaction was done by you as her agent? A. Yes, sir."

While Mrs. Billick was on the stand in chief in her own behalf this happened:

"By the court: It is admitted here on both sides that the satisfaction on the margin of the record appears on that deed of trust entered by M. L. Billick, assignee; that is conceded and attested to by the recorder of deeds of Schuyler county and the note was presented and cancelled.

"Q. What was your purpose in doing that? A. For him to collect the money. Q. Did he collect the money for you? A. No, sir. Q. Did you give it to him, send him down here to do that? A. I authorized him to do it. Q. Did you authorize him to enter a satisfaction of record or anything of that kind? A.

No, sir. Q. Has that note ever been paid to you? A. No, sir. Q. Did you ever get any money on it at all? A. No, sir."

(*Note*: It is not clear what the witness meant by her last answer. Her father's note was for $382. The Lasley notes aggregated $325. The cash payment to Billick, put beyond question, was $175 and the witness seems to ignore that payment.)

On cross-examination the following appears:

"By Mr. Higbee: Q. Now, Mrs. Billick, when that deed was executed you sent it down here with your husband to close up the transaction with Mrs. Lasley, did you not? A. I sent it down to collect the money. Q. You gave it to your husband to come down here and close the deal with Lasley? A. If they paid the money for it. Q. He was your agent in the matter, was he not? A. Yes, I suppose he was my agent. I expected the money in place of him doing what he did. Q. You authorized him to come down here and close up the transaction with the Lasleys? A. Yes, sir. Q. And at the same time he brought down here this three hundred and eighty-two dollar note that you had of your father? A. I suppose he did. I don't know whether he did or not. Q. You knew that deed of trust had to be released, did you not? A. I don't know anything about it."

The case may proceed, also, on the theory that defendant failed to prove the allegation in her answer that Higbee "had actual knowledge of all transactions above set forth" (i. e. in the answer) "at the time thereof and knew the conditions at the time thereof and also at the time he made the purchase." Plaintiff was put on the stand by defendant and his conscience was sifted in that regard in chief and again in rebuttal. His knowledge is argued by learned counsel. But that argument travels somewhat on the legs of innuendo and surmise and not, as we can see, on proof of the fact itself or from proof of other facts from which it

arises by reasonable inference. The details of the testimony in this particular are omitted. We give our estimate of its weight and tendency from a study and analysis of it.

So, the allegation of the answer that Martin L. Billick, trustee in the MaGee deed of trust, assumed to release the lien of the deed "as trustee," is not only not proved, but is wide of the mark. He released ostensibly as assignee, not as trustee, as heretofore pointed out, and he was made assignee of the note in furtherance of an agency and the objects thereof.

On such record we are of opinion the decree should be affirmed. This, because:

(a) An heir, as such, can not set aside a regular administrator's sale of land, or redeem as a matter of course. The sale in this instance was admittedly regular and the narrations of the administrator's deed are to be taken as prima facie true. [R. S. 1909, secs. 173, 176; Bray v. Adams, 114 Mo. l. c. 491.] If such heir has a standing in equity to avoid such sale and transfer of his ancestor's title, it self-evidently springs not merely from his heirship, or as of course, in this jurisdiction, but because of fraud or some irregularity or untoward incident under some recognized head of general equity jurisdiction.

Moreover, it is hornbook or primer doctrine in Missouri that an administrator's sale, duly approved and allowed to rest unappealed from, as here, can not be attacked collaterally. It is entitled, in the first instance, to the grace of the same convenient and kindly presumptions attending judgments of courts of general jurisdiction and found useful in administering justice in courts—among those presumptions is one that such court proceeds by right and not by wrong.

So, too, the title to real estate is cast by descent on the heir on the death of his ancestor burdened with the paramount right in the creditors of the ancestor to have their debts paid. Under the very old law in Mis-

souri, as elsewhere, a creditor could pursue the person as well as the property of his debtor. The person is now free from his pursuit (for which grace many of us may be truly glad that we live in these times and not formerly), but he may still in life or death pursue the property and take enough of it to satisfy his claim. Heirs, therefore, take *cum onere* and *sub modo* to that extent —the creditor's right to payment being in the nature of a lien. [Aubuchon v. Aubuchon, 133 Mo. l. c. 265; Rogers v. Johnson, 125 Mo. l. c. 216.]

Quickened by keeping in mind the foregoing general propositions, we come to a closer view of the case.

(b)  On the question of agency it is not worth while to waste time on whether Billick had authority to make the escrow agreement or not; for this case does not hinge on that proposition.

Nor is it worth while to discuss the question whether as between the husband and agent, on one side, and Mrs. Billick the wife and principal, on the other, he wronged his wife by assuming to transcend the bounds of his agency as limited secretly by her and laid himself open to an action for damages on her part; for she is not suing him, nor is he suing her, but the issues here are between her and third parties.

It is clear from all the facts and the very logic of the situation that, as to the public, Billick was his wife's general agent in the transaction in hand. Agreeably to that idea Billick testified he was her agent and that all the acts he did were done as her agent. When rightly interpreted her testimony agrees with his. True she says she ''expected'' this, that and the other thing. True she says she did not authorize him to make the release, but it is plain, we think, that her testimony takes root in feminine unfamiliarity with business details, and that what she meant was that she did not know what he had to do and that she had no one detail in mind, but was interested alone in results. Look at it. She indorsed the note. She put it in his posses-

sion. She intrusted him with a deed to be delivered which narrated that it transferred a clear title free of incumbrance. She then sent him on a mission to a far country with a free hand to close up the transaction. Much is necessarily implied in all that. For instance, she must be held to have contemplated, *ex necessitate rei*, a release of her mortgage by her husband who was clothed by her with the apparent ownership of the note for that identical purpose. Not only so, but she received $175 in cash as the result of the very transaction then consummated by her husband. That fact is in the nature of a ratification, and she must reckon with the proposition that to ratify is to authorize, and the other that to ratify estops her.

There is another phase of the matter of sensible significance. Mrs. Billick is presumed to know the rule of law making real property descend to an heir subject to debts. That rule is but fireside doctrine. She could not expect the purchaser to take title from the heirs without the question of the indebtedness of the MaGee estate being held in solution. She sent her husband, an intelligent gentleman and presumably her closest friend, to close the transaction confronting that situation as a fact for him to wrestle with. We draw inferences unfavorable to defendant's present contention from the foregoing. It seems to us she is drawn within the range of the maxim: *Qui facit per alium facit per se.*

A third party, dealing with an agent, deals with him with his warrant of authority before him, but where there is no written warrant of authority and an agent has been clothed with the visible indicia of a general agency, as was the case here, and given apparent power as apparent owner and custodian of a note to release the lien of a deed of trust securing the note, then those dealing with the agent are not interested in the secret processes of the principal's mind, but they are interested in the character in which the agent is held out by

the principal; for that character is the expression and evidence from which the principal intends the public shall determine his purposes and objects. [Beheret v. Myers, 240 Mo. 58, 144 S. W. l. c. 830.]

We hold Billick had authority to release his wife's deed of trust. The fact that he did it as assignee was but an innocent expedient to obviate the expense of making and recording a power of attorney—an expedient of everyday use in releasing deeds of trust and cancelling notes.

(c) Defendant's paper case runs on the theory that plaintiff had knowledge of the fact that her original note secured by her original deed of trust was not paid, that the release of her trust deed was without authority, that the three Lasley notes were taken in lieu of her unpaid original note and so on. On this basis it is argued that as the MaGee heirs inherited subject to the former mortgage and as the creditors of MaGee had no rights superior to that mortgage, therefore, in the eye of equity, her original deed of trust stands as if unreleased and her original note as unpaid, and plaintiff bought subject to her known equities. If she had been able to prove Higbee took with knowledge as alleged in her answer, we would have a different case to deal with. But, failing in her proof, the premise on which the argument of her counsel is builded is imaginary, and the conclusion therefor is a *non sequitur*. When plaintiff bought, the record, of which he must take notice whether he will or not (Seilert v. McAnally, 223 Mo. l. c. 518), showed that the title of MaGee was clear, up to the deed of the heirs, which latter in turn was subject to debts and an administrator's sale as a matter of law.

(d) Finally it is insisted that plaintiff, a purchaser at an administrator's sale, bought as if at execution sale subject to the doctrine of *caveat emptor* and took subject to all defendant's equities. *Contra*, it is argued for plaintiff that the sale was a judicial

sale and that something is due to that fact as distinguished from an execution sale. Generally, and somewhat loosely speaking, courts have dealt with execution sales as judicial sales; but in strictness there may be a difference, as pointed out by our brother GANTT in Noland v. Barrett, 122 Mo. l. c. 189. The sale in hand was clearly a judicial sale *stricti juris*. It was specifically ordered by the court. It was made pursuant to judicial authority. It was approved by the court prior to the execution of the deed, and, to crown all, the very deed was ordered by the court. But we think it unprofitable to be drawn into an exposition of the law in the above regard; for even in an execution sale the purchaser gets title through his sheriff's deed as against a deed by the execution debtor unrecorded at the time. [Vance v. Corrigan, 78 Mo. l. c. 95-6; Harrison Machine Works v. Bowers, 200 Mo. l. c. 231-2.] At very best defendant's released deed of trust could not stand on a better foot than an unrecorded deed.

Something is made of the proposition that it has been held that the indorsement of a check or a promissory note by a wife does not measure up to the stringent standard of married woman's enabling acts, whereby a husband is shorn of his common law right to reduce the personal property of his wife to his own possession except in the very way pointed out by statute. [R. S. 1909, sec. 8309.] We are referred to cases holding that the blank indorsement of the wife does not fill the requirement of that statute. James v. Groff, 157 Mo. 402, is a sample of them. But we can not see that the instant case turns on that point. This husband reduced none of his wife's property to his possession, so far as disclosed, and the statute can not be borrowed and put to a strange and unheard-of use and office. As in life the shoemaker should stick to his last and the tailor to his goose, so in law statutes should fill only the offices and uses the lawgiver designed for them.

· We have not followed out all the ramifications of the arguments of counsel pro or con, but have dealt with those propositions we deemed vital.· In laying down rules of law in land litigation care is due to avoid novel propositions in a given case which will draw other cases within the hazard of their new doctrine and thus tend to unsettle titles. Counsel have cited us to no case going as far as they ask us to go in the case at bar. We know of none.

The premises all considered, the decree was right and it is affirmed. All concur.