I. V. RILEY, RESPONDENT, v. SARAH E. AKIN, ADMX., ETC., APPELLANT.—45 S. W. (2d) 122.

Kansas City Court of Appeals.   January 11, 1932.

*Robert S. Eastin* and *Lucien J. Eastin* for respondent.

*Sterling P. Reynolds* for appellant.

TRIMBLE, P. J.—This action originated in the probate court of Buchanan county, wherein said court ordered defendant administratrix to pay the taxes of 1923 and 1924 on real estate which were due and unpaid at the time of an order of sale of said real estate for payment of debts. Said taxes were ordered to be paid out of any funds in the hands of administratrix and belonging to said estate. Administratrix, instead of paying the taxes as ordered, appealed to the circuit court of said county where, after a hearing anew, the judgment of the probate court was upheld and the administratrix likewise ordered to pay said taxes out of any funds in her hands belonging to said estate. Administratrix has again appealed, and this time, of course, to this court.

I do not think the case should be reversed outright, though doubtless it should be reversed and remanded. My view is that we haven't sufficient evidence in the record before us to enable us to say "there is no theory upon which the court could have rendered judgment in favor of plaintiff" which is what we will, in effect, have to say before we can reverse the judgment outright.

In the *first* place, it is necessary to keep clearly in mind the nature of this suit and what it is that plaintiff seeks. It is not, as defendant seems to think, a suit to *recover* the amount of taxes which the administratrix has not paid. Neither is it a suit "to recover a judgment for breach of an oral warranty" or for the breach of any covenant in a deed. Of course, in any such case, the probate court would have no jurisdiction and, having none, the circuit court would acquire none on appeal. It is not permissible to throw the case into any category of the kind mentioned and then, having done this, get rid of it on the ground of lack of jurisdiction. To do this is to imitate the methods of the celebrated physician who, having a specific or sovereign remedy for *fits,* always threw his patient into one of *them,* and then cured or disposed of the patient by means of his unfailing remedy.

The case not being one for the *recovery* of any amount, the appellant's point, that as the plaintiff (respondent) has not himself paid the taxes he cannot obtain any judgment herein against the administratrix, can have no prevailing force.

The record discloses that the administratrix on October 20, 1924, prayed for an order of sale of the real estate for the payment of debts, and on the 1st day of December, 1924, the probate court ordered the administratrix to sell the real estate "at public *or private* sale, for cash for not less than three-fourths of the appraised value, and to report such sale," etc.

The statement or petition, in the case at bar, filed in the probate court by plaintiff further recites that "prior to the making of said order of sale the administratrix of said estate had negotiated with

him (petitioner) for the purchase of said land and *had engaged with him by her engagement in writing* to have title to said land conveyed to him *free and clear of taxes and other liens except* six thousand six hundred sixty-six and 67/100ths dollars, which your petitioner agreed and bound himself to pay as a part of the purchase price of said land; that with the exception of said incumbrance all other liens of every nature, *including taxes then due* were to be paid by the seller and said agreements of the seller as herein set forth *constituted the consideration* for the purchase of said land by your petition.

"Your petitioner further avers that subsequent to said agreement he performed all the obligations resting upon him thereunder and paid for said land, all as he had agreed and bound himself to do, but that the other party to said contract, namely, the said Sarah E. Akin, administratrix, failed and has since failed to pay the taxes on said land that were *due and unpaid at the time the title thereto was conveyed* and said taxes are still a lien thereon; that at the time said transaction was closed the taxes for the years 1923 and 1924 were *due and unpaid* and as herein stated were to be paid by the seller, and said taxes now amount to," . . . etc. (Italics mine.)

The statement or petition closed with the following—

"Your petitioner prays that the court will enter its order of record requiring and directing the administratrix of said estate to pay said taxes out of the funds in her hands as administratrix of said estate."

The probate court on the 13th of March, 1930, made its order or judgment which recited among other things, that the court finds that "it was agreed between the administratrix and the said I. V. Riley, that said taxes should be paid and the property conveyed to the petitioner I. V. Riley, free and clear of taxes.

"The court further finds that said taxes have not been paid and that there is now due the sum of $387.80 taxes and penalty which should be paid out of the funds of said estate, clearing the land purchased by the said I. V. Riley from the incumbrance of said tax.

"It is further ordered by the court that the administratrix of the estate of Frant J. Akin, deceased, be and she is hereby directed, out of the funds in her hands as administratrix to pay the taxes for the years aforesaid."

The administratrix duly appealed to the circuit court, where, on February 21, 1931, said court rendered its judgment or decree finding that the order of sale was made as above set out and that "thereafter the said administratrix entered into negotiations with the plaintiff in this action for the sale of said real estate and by her contract entered into with this plaintiff she obligated and bound herself and the said estate of Frank J. Akin, deceased, for a valuable

consideration, to convey upon the payment of said consideration, a merchantable title to the plaintiff, free from all liens of every character except those mentioned in said order of sale and free from taxes *then due* upon said land.

"The court further finds that *said sale was completed under the terms of said contract and report thereof was made* to the court at the April term, 1925, of said court and on the 13th day thereof, and *said report of sale was approved* and the said administratrix was authorized to execute and deliver to the plaintiffs herein a deed conveying said property to the plaintiff, and that pursuant to said order, the said administratrix did execute and deliver to plaintiff an administrator's deed which was duly acknowledged in open court . . ., etc.

"The court further finds that *at said time* the State and county taxes for the years 1923 and 1924 *were due and unpaid;* that it was the duty by law, for the administratrix *to pay said taxes* out of any funds in her hands belonging to said estate and to take credit for such payment; that the administratrix failed to pay said taxes and left them an outstanding lien against the real estate described in said administrator's deed, *contrary to the terms of the contract of sale* and of the obligation of said administratrix to convey to plaintiff a title free from taxes and liens except as mentioned in the contract. (Italics mine.)

"The court further finds that said taxes with penalties now amount to the sum of $486.66 which are lawfully and properly charged against the estate of said Frank J. Akin, deceased, and the court orders and directs the said administratrix to pay out of any funds in her hands belonging to said estate the said taxes."

The record does not disclose when the decedent Akin died, nor when defendant was appointed administratrix. It must have been, however, prior to October 20, 1924, for that was when the administratrix applied for an order of sale, which was made December 1, 1924. As the taxes in controversy were those of 1923 and 1924, doubtless those for 1923 were a *lien* on the land during the life of deceased and those for 1924 *were due* at the time the order of sale was made and became delinquent shortly thereafter, to-wit, on January 1, 1925.

If decedent was alive on January 1, 1924, then the taxes of 1923 were a lien or "charge" on the real estate within the meaning of 'section 182, Revised Statutes 1929, which provides that "it shall be the duty of the executor or administrator *to pay all such taxes* (State, county or city) *without any demand* therefor being presented to the court for allowance; Provided, that no executor or administrator shall pay any taxes on the real estate of the deceased that are not a charge against the same at the death of the deceased, *except* where

he is in possession of the realty under an order of the court.'' (Italics those of the author hereof.)

If the order of sale was made December 1, 1924, has the effect of giving administratrix authority to take charge or possession of the real estate for the purpose of selling it for the payment of debts, then administratrix *did* have authority, and it was her duty under the law, to pay, not only the taxes of 1923, but also those of 1924, without the allowance of a demand therefor. I do not mean to hold unqualifiedly that she had such right as to 1924 taxes, but it may be probable, and indeed likely, that she had such right and it was her duty to do so as to the 1923 taxes, and plaintiff in this case may be entitled to have a *part* of his contention upheld even though he may not be entitled to have *all* of it granted.

But I do not concede that plaintiff's right or contention in this case is to be denied solely because no demand for the taxes was formally allowed. Administratrix's duty to pay these taxes arises, if it does arise, out of the contract of sale which she made with the purchaser of the land. This was not a *public* sale, and therefore, section 135, Revised Statutes 1929, directing the sale of *all the right, title, and interest* of the deceased, and section 138 of said statutes, directing a deed to be made carrying ''all the right, title and interest'' of the deceased, or section 140, referring to the sale of all such ''right, title and interest,'' and section 165 providing that, if report is approved, deed shall be made conveying such ''right, title and interest'' do not limit or restrict the court from prescribing or approving incidental terms, which are not forbidden by law, on which the property is sold. This was a *private* sale; and the only restrictions placed by the statute (sec. 162, R. S. 1929) on the *private sale* is that the land shall not ''be sold . . . for less than three-fourths of its appraised value, nor shall the . . . (administratrix here) . . . directly or indirectly become the purchaser of such real estate.'' In other words, this being a private sale, the administratrix was at liberty to agree to any terms, not unqualifiedly injurious to the estate or forbidden by law, which may enter into the securing of a purchaser, or which the later may, in good faith and under the law, require before he will become a purchaser. In making the order to sell this real estate, at *private* sale, the probate court says, in effect, to the administratrix ''go out and make a sale of this land privately on the most advantageous terms you can get, but you must not agree to any terms which will permit the purchaser to get the land for less than three-fourths of the appraised value, and when you have made a sale, report the same to this court, and, if approved, your contract will become binding and the deal shall be finally closed.'' 'One of the terms of the contract she made was that she would pay all taxes and leave the land clear of

all liens except the lien of the mortgage which purchaser agreed to pay. These taxes were due and unpaid and at least those of 123 were already a *lien* on the land, while those of 1924 were then *due* and payable and would become *delinquent* January 1, 1925, and were in fact delinquent when the report of sale was made and confirmed. Of course, if the taxes were not to be taken care of, the purchaser would have reduced the amount of his purchase price to the extent of said taxes. Wherein then would the estate be injured or deprived of any right or sum, and where is the law which forbids the administratrix, under these circumstances, from agreeing to these terms? Of course, she denies that any such terms were made, but both the probate court and the circuit court *found against her* on this feature. And this court must accept those findings to be true. So that, all that plaintiff asks for is that the administratrix perform what she solemnly agreed to do, and so far as we know now, she should be made to do. The case is wholly unlike that of Graham' v. Wilson, 185 S. W. 1164, for in that case decedent died in 1909 but the taxes were for the years 1911, 1912 and 1913, and of course they could not be made the basis of a credit in favor of the administratrix when the lands were never taken possession of by her under any order of court, but were taxes owed either by herself as widow or by the heirs of the real estate. To have allowed the administratrix credit in the case cited would have been a positive violation of the statute. [Sec. 181, R. S. 1909 (now sec. 182, R. S. 1929).] Likewise the case of Jackson v. Magruder is not applicable to the facts of the case at bar. In the cited case the order of sale was a *general* order of sale and the sale was a *public* sale. The contention was that the probate court could not sell an equity of redemption, the litigation being between plaintiff as purchaser under an administrator's deed, and defendants as purchasers under the void foreclosure of an existing and prior mortgage. The Supreme Court held that the probate court could do so, but that notwithstanding that, the defendant in an ejectment suit, occupying a better position than the plaintiff, could hold under color of title even though it was a void foreclosure. The case has nothing to do with the power of a probate court to authorize the sale of real estate free and clear of taxes which were due and unpaid at the time the order of sale was made. The case of Welton v. Hull, 50 Mo. 296, is also not in point.

The citations of 35 C. J. 30, 56, 57, are likewise dealing with *public* sales of real estate in which of course no terms of sale can be imposed by the bidder nor enforced by him except those contained in the order of sale which usually and indeed universally, so far as known, has but one term, namely, cash for the highest bid made. So also the citation of 24 C. J. 631 deals with *public* sales. The case of Sexton v. Siking, 90 Ill. App. 667, is likewise not applicable

to the situation here. That was a *public* judicial sale, and furthermore, it was a *disputed fact* as to whether the administrator announced at the sale that he would pay the tax. At page 668, the appellate court say: "There is no definite finding in the record upon this issue . . . but we infer . . . that the court found that the administrator had *not* agreed to pay the tax." (Italics mine.)

There is no question but that the rule of *caveat emptor* applies to judicial sales including administrator's sales *"as a general rule."* (Italics mine.) [Throckmorton v. Pence, 121 Mo. 50, l. c. 57; Estes v. Alexander, 90 Mo. 453.] These cited cases, it may be observed, deal, as do those above mentioned, with *public* sales.

However, I take no issue with the rule of *caveat emptor* applying even to private sales made by an administrator. But how can the rule of *caveat emptor* (":Let the buyer take care") apply to the circumstances of this case? Here the buyer did "take care" by having, in the terms of purchase and sale, the provision that the taxes for 1923 and 1924, *due and unpaid* at the time the application for and the order of sale was made, should be paid by the estate and not left for him to pay them.

Neither do I think anything in the nature of a collateral attack is made on the judgment approving the sale, nor does it involve any attack after the term at which it was made has passed. Of course, such things are not allowable. It involves nothing more than the requiring of the administratrix to do what the law allows, or at least does not forbid her to do, and which she agreed in writing to do in securing plaintiff as a purchaser of the land. As hereinbefore stated, the record does not show the date of Frank Akin's death. Nor does it show the order of sale that was made, nor the report of sale, nor the order of approval, nor the administratrix's deed. (However, with regard to this deed we assume that it is in the usual form of an administrator's deed but it may contain something that might throw some light on the matter.) This court is, therefore, hardly in a position to do otherwise than to remand the case for a new trial, at which all the above evidence may be shown, including, if possible, the written contract of sale which, at the time of the former trial was lost, and oral testimony had to be used to ascertain its terms. It is said the English poet Hood, on his deathbed and in the agonies of impending dissolution, muttered to himself, "I am taking a fearful leap in the dark," and likewise, though not under such awful circumstances, we would be taking a "leap in the dark" were we to reverse this case outright, with the record in the shape it is in.

The judgment is reversed and the cause remanded for a new trial. *Arnold, J.,* concurs; *Bland, J.,* dissents in a separate opinion.

742

BLAND, J.—There is no theory upon which the court can render judgment in this case in favor of plaintiff.

The evidence is that the agreement was that the land should be "free from all charges and encumbrances of every kind and character." There is no evidence or claim that the taxes in controversy became a lien upon the land during the life of deceased. In fact, the abstract of the record in another case that came to this court in which defendant was a party, shows that deceased died before any of these taxes became a lien. However, we cannot, in order to dispose of this point, take judicial notice in this case of a record in another case in this court. But what I am saying is that we cannot assume that any part of the taxes sued for herein became a lien prior to the death of deceased. Unless such is the case defendant, as administratrix, had no right to pay the taxes upon the real estate of deceased, unless she was in possession of it under an order of court, and then only after there had been a formal allowance of the debt by that court. [Graham v. Wilson, 185 S. W. 1160.] There is no evidence that the administratrix in this case ever took possession of the property under an order of the Probate Court; in fact, there is no claim or contention that any such order was ever made.

It is doubtful that a probate court, even in its order to sell real estate, can, in a case of this kind, order that it be sold free and clear of encumbrance. [Sections 168, 135, 138, 140, and 165, R. S. 1919; Jackson v. Magruder, 51 Mo. 55, 58; Welton v. Hull, 50 Mo. 296, 298, 300.] (The facts in the Jackson and Welton cases are not entirely similar to those in the case at bar, and the cases are cited only for statements of the court therein as to the kind of title that can be conveyed by a deed in a sale of this kind.) However, we need not pass upon this question, because there is no claim or contention that the order of sale contained any such provision and, certainly, the administratrix had no right to enter into a contract selling land free of encumbrances without any authorization by the probate court. [35 C. J. 30, 56, 57; C. J. 631; Sexton v. Siking, 90 Ill. App. 667.]

The rule of *caveat emptor* applies to judicial sales, including those by authority of the probate court. The purchaser takes subject to defects, liens and encumbrances, or at least those he had notice of or of which he could have obtained knowledge. [Throckmorton v. Pence, 121 Mo. 50; Estes v. Alexander, 90 Mo. 453; Higbee v. Bank, 244 Mo. 411; Cashion v. Faina, 47 Mo. 133; Schwartz v. Dryden, 25 Mo. 572; Owsley v. Smith Heirs, 14 Mo. 153; 35 C. J. 75, 78.]

A sale of real estate through the probate court, even at private sale, is a judicial sale. The only difference between a private sale and a public sale of this kind is that, in the former, the land must not be sold for less than three-fourths of its appraised value, while in the latter, it is sold to the highest bidder. In neither event can the administrator become a purchaser of the real estate. [Sec. 162, R. S. 1929.] There is no ground for saying, in effect, that sections 135, 138, 140 and 165, Revised Statutes 1929, have no application to the facts in this case. Upon their face, they apply to both public and private sales. They, together with section 168, in no uncertain terms, state what shall be sold and conveyed.

Without passing upon the point that the contract of sale was merged in the deed, I think there is no theory upon which the probate court can order the payment of any part of these taxes after the land was sold, even if it can be shown that part of them accrued prior to the death of deceased. The term of court at which the transaction was consummated had expired and at the time this suit was brought the probate court had no jurisdiction over the land in question, and it could have made no order concerning it. The whole matter was a closed book so far as the estate was concerned and that court could not approve, even if it had the power, the sale that was actually made. Legally, the estate owes plaintiff nothing and the court had no more right to give away $486.66 of the money of the estate to plaintiff then to donate it to any other purpose. The whole case, I think, is decided in Sexton v. Siking, supra.

The judgment should be reversed.