■ Instruction No. 7, offered by defendant, was as follows:

"Your verdict must be for defendant Lester E. Cox Medical Center if you believe that, at the time plaintiff Opal Carden fell on said defendant's Robberson Avenue Parking Lot, there existed throughout the City of Springfield a general condition of snow and ice, and the condition of said defendant's Robberson Avenue parking lot, as submitted in Instructions No. 2, 3, 4, and 5 was not a special, isolated condition."

The jury was thus thoroughly instructed as to all factual issues necessary to support the verdict in this case. In addition, the issues were ably, clearly and forceably presented to the jury by counsel in closing argument. We find no prejudicial error in the instructions.

■ Defendant finally urges that the verdict of $58,500 in favor of plaintiff is excessive. Plaintiff sustained an impacted fracture of the neck of her right femur necessitating a major operation to insert a Zimmer screw and plate and another operation to remove the screw and plate. In addition, plaintiff underwent a laminectomy during a third major operation for surgical repair of a ruptured intervertebral disc sustained as a result of the fall. She had a thirty-five percent permanent disability of her right leg and a fifteen percent permanent disability of her body as a whole. The verdict was not excessive.

Finding no error, the judgment is affirmed.

BILLINGS, C. J., and TITUS, J., concurs.

STONE, HOGAN and FLANIGAN, JJ., not participating.

**Russell E. HONEYFIELD and Linda Sue Honeyfield, Plaintiffs-Respondents,**

v.

**Don E. LAMBETH and Margaret Lambeth, Defendants-Appellants.**

**No. 9541.**

Missouri Court of Appeals, Springfield District.

Feb. 3, 1975.

David H. Jackson, Osceola, for plaintiffs-respondents.

Barkley M. Brock, Poague, Brock & Wall, Clinton, for defendants-appellants.

REX A. HENSON, Special Judge.

This is a suit for specific performance of an option to purchase real estate.

Appellants owned a 195 acre farm as tenants by the entirety.

In July of 1971 the appellant-husband listed the property for sale with a local realtor.

Then in September of 1971 appellant-husband negotiated with respondent-husband about selling the land to respondents. And after several meetings appellant-husband agreed to sign a written option. Respondent-husband obtained three blank option forms from the FHA and delivered them to the appellant-husband. At the same time respondent-husband told appellant-husband that the option he desired would be for six months and that he could not obtain a loan from the FHA unless the option form was signed by both appellants.

Appellant-husband took the blank option forms home with him. Appellant-wife signed the option forms in blank without reading them and apparently the appellant-wife never knew the terms of the option.

Then in January of 1972 appellant-husband met with respondents at a bank to close the transaction. Appellant-husband told the banker that the signature on the blank option form was that of his wife. Respondent-husband changed the expiration time on the option from six months to nine months with the acquiescence of appellant-husband. The option was signed at the bank by the appellant-husband and by both of the respondents, and at the same time respondent paid to appellant-husband One Dollar ($1.00) as consideration for this option.

During the course of their negotiations appellant-husband and respondent-husband had agreed that any crops growing on the property during the term of the option would belong to appellants.

This agreement was not spelled out in the written option. And the date of delivery of possession of the real estate was not specified in the option.

During the course of these negotiations respondents made numerous trips out-of-town and spent a considerable amount of time in connection with this transaction. Also in order to obtain an FHA loan the FHA required respondents to obtain a percolation test on the land for which the respondents paid Fifty-Four Dollars ($54.-00).

In May or June of 1972 appellants indicated to respondents that they had changed their minds and no longer desired to sell the real estate under the option.

The FHA approved repondents' application for a loan in July of 1972, and respondent-husband immediately called appellants and informed them that the loan was approved and that respondents wanted to go ahead with the purchase of the property.

Approximately one week later the respondent-husband went to the real estate in question and saw the appellants there and was advised by the appellants that the deal was off.

A few days later a formal notice in writing of the acceptance of the option by respondents was sent to appellants.

Appellants refused to convey the property. to respondents, and a suit for specific performance was instituted. Judgment for specific performance was rendered against the appellants, and it is from that judgment that appellants have appealed to this Court.

I.

Appellants' first point is that the option was not binding on appellant-wife because the blanks in the option contract were not filled in according to the authority given. In this connection appellants argue that the original understanding was that the option would be for six months and that appellant-wife signed the option with the understanding that the option would be for six months. Therefore when the option was changed from six months to nine months it was done contrary to the authority given by appellant-wife. The difficulty with this position is that the transcript indicates nothing of the kind. There is nothing to show that appellant-wife knew that the option was to be for six months. In fact there is nothing in the transcript or records to show that appellant-wife knew any of the terms of the option. The transcript does show that appellant-wife signed the option without reading it and that she entrusted the conduct of the entire transaction to her husband.

The conclusion must be in this case that the facts and circumstances justify a reasonable and logical inference that appellant-husband was empowered to act for appellant-wife in connection with this option. And the authority of the appellant-husband included the right to agree to a change in

the option time from six months to nine months. Ethridge v. Perryman, 363 S.W. 2d 696, 701–02 (Mo.1963); Higbee v. Billick, 244 Mo. 411, 148 S.W. 879, 883 (1912); Rimer v. Hubbert, 439 S.W. 2d 5, 7 (Mo.App.1969).

## II.

■ The second point advanced by appellants is that the option was too indefinite to be binding. Specifically appellants state that the option did not provide who was to receive the crops growing on the property and when possession of the property was to be delivered.

It should first be noted that there was an oral contract between the parties by the terms of which it was agreed that the crops should belong to appellants. And respondents do not set forth anything in their brief why this oral agreement is not binding and enforceable. In addition it is our understanding that the crops in question were indeed harvested by the appellants at or before respondents filed their law suit for specific performance which would make this issue moot in any event.

It is true that the option does not state when respondents are to take possession. But the time of taking possession is not a crucial point that must be included in an option contract in order for it to be binding. Ray v. Wooster, 270 S.W.2d 743 (Mo.1952). And the fact that the parties did not specify when possession was to be taken is cured because the law implies that the parties meant for possession to be given within a reasonable time. Wilkinson v. Vaughn, 419 S.W.2d 1, 5 (Mo.1967).

We therefore rule that this option was not too indefinite to be binding.

## III.

■ The third and final point raised by appellants is that there was no valuable consideration for the option. The transcript in this case shows this not to be the case. One Dollar ($1.00) in cash was paid to appellants for the option. In addition to this respondents made several trips in connection with this transaction. And in order to obtain an FHA loan to purchase the real estate respondents had a percolation test conducted on the real estate for which they paid Fifty-Four Dollars ($54.00).

We believe that the One Dollar ($1.00) cash paid would in itself be sufficient consideration. Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649 (1941). And the fact that respondents made several trips and were out Fifty-Four Dollars ($54.00) in cash to run a percolation test on the real estate constitute sufficient consideration. This is because any expense, trouble or inconvenience experienced by a plaintiff makes the consideration valuable in law. Custom Head, Inc. v. Kraft, 430 S.W.2d 593, 595 (Mo.App.1968).

Finding no error in the judgment of the trial court, it is affirmed.

BILLINGS, C. J., and STONE and TITUS, JJ., concur.

HOGAN, J., not sitting.

FLANIGAN, J., not participating because not a member of this Court at the time the cause was submitted.