BANK OF HOLLISTER, APPELLANT, v. E. R. O'BRIEN, RESPONDENT.[*]

In the Springfield Court of Appeals. Opinion filed January 7, 1927.

1.—Evidence—Bills and Notes—Oral Contemporaneous Agreement. An oral contemporaneous agreement cannot be interposed to defeat recovery on a promissory note.

2.—Same—Same—Nondelivery of Note Can be Shown as to Parties and Those Having Notice. It is always competent to show nondelivery or conditional delivery of a note as between the original parties thereto and those having notice without violating the rule against oral contemporaneous agreements, since note is incomplete and revocable until delivered for purpose of giving effect thereto, in view of section 803, Revised Statutes 1919.

3.—Bills and Notes—Holder in Due Course—Plaintiff Not Such Holder under Circumstances. Where note given for stock in chain store company was left in plaintiff's bank until store was put in with maker's son-in-law as manager, and plaintiff's president was so advised, no subsequent arrangement or agreement between plaintiff and payee without maker's knowledge and consent could make plaintiff a purchaser in due course.

**On Motion for Rehearing.**

4.—Escrows—Bills and Notes—Delivery. Where note given for stock in chain store company was placed in bank to remain until store was put in with maker's son-in-law as manager, it was placed in escrow and not in a legal sense delivered either to payee or bank, notwithstanding that payee carried note from restaurant, where it was signed, to bank, accompanied by maker.

---

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, p. 203, n. 60; p. 206, n. 11; p. 497, n. 92; Evidence, 22CJ, p. 1153, n. 9; p. 1223, n. 21; p. 1255, n. 53.

Appeal from the Circuit Court of Webster County.—Hon. C. H. Skinker, Judge.

AFFIRMED.

*C. B. Sharp, G. W. Thornberry* and *Tom Moore* for appellant.

Plaintiff bank was a holder of the note sued on, in due course. (1) Such note was complete and regular on its face. (2) The bank became the holder before it was due and without notice of any previous dishonor, and the same was taken in good faith and for value without notice of any infirmity or defect in the title of the person who negotiated the same to the bank. R. S. 1919, sec. 838, art. 1, chapter 7; Long v. Mason, 273 Mo. 266. (3) When O'Brien signed the note and negotiated the same before maturity thereof, by his unqualified endorsement across the back of the instrument warranted: First that the note was genuine and in all respects what it purported to be. Second, that he had good title to it. Third, that all prior parties were capable of contracting. Fourth, that he had no knowledge of any fact that would impair its validity, he being the maker, payee and endorser and the court's refusal of plaintiff's offered Instruction B constitutes reversible error. R. S. 1919, sec. 851, art. I, chapter 7; Hawkins v. West, 167 Mo. App. 439, and authorities cited. (4) The bank was a holder in due course before maturity and for value, and even if the bank officers had knowledge that the note was given for stock in the Industrial Transportation Company when the note was negotiated, unless at the time and at the instant they knew that the contract for stock was breached, the failure to deliver stock at some future time by the company as set up by defendant as a failure of consideration, cannot avail and the admission of evidence that defendant did not receive the stock, was erroneous. Black v. First National Bank, 96 Mo. 399; Page v. Ford, 131 Pac. 1013, Oregon case; Reeves v. Lettis, 143 Mo. App. 196; Bank of Commerce v. Morris, 156 Mo. App. 43. (5) The admission of evidence as to a parol escrow agreement, the court's instructions No. 1 and 2, sub-

mitting the defense of an escrow agreement, was error. Peoples Bank of Ava v. Rankin et al., 282 S. W. (Mo.) 91, and authorities cited by Springfield Court of Appeals, concluding paragraph 3 of such opinion. (6) A collateral contemporaneous agreement providing that a note, negotiable, shall not be paid if an executory agreement forming the consideration of the note is not performed, will not affect the validity of the note in the hands of the endorsee, though the endorsee have knowledge of the agreement. Jenninks v. Todd, 118 Mo. 296. (7) The court erred in refusing plaintiff's proffered Instructions A, C, D, E, F, and in overruling the demurrer filed by plaintiff at the close of all the evidence, and at the close of defendant's evidence, as the defense relied upon, and the issue submitted to the jury, was a parol contemporaneous agreement that if the store didn't go in by a certain time to find for defendant, such was erroneous. Peoples Bank v. Rankin, cited above; Jennings v. Todd, cited above. (8) And the court erred in giving instruction No. 1 and.overruling plaintiff's Instruction P for the reason that defendant relied upon a parol escrow agreement and even if such was a defense, the testimony of O'Brien does not, with the most favorable construction and widest range and latitude, establish that he and Charley Moore, president of the bank, had any contract or agreement that the note was to be returned to O'Brien if the store didn't go in at Hollister by the 15th day of April, 1921. Authorities cited above. Evidence of O'Brien, pages 32 to 42, appellant's abstract.

*D. T. McConkey* and *Rufe Scott* for respondent.

(1) The placing of the note in the Bank of Hollister was conditional, and for a special purpose only, and not for the purpose of putting the note in circulation or transferring the property in the instrument. R. S. 1919, sec. 803. (2) At the time the note was placed in the Bank of Hollister, and at the time the bank issued both the first and second time certificates of deposit, the bank paid nothing on account of the note and only issued its time certificate to be paid at a future date, and the bank received and had due notice of the infirmity in the instrument and the defect in the title and fraud by which it was procured long before it paid out anything on account of the note. R. S. 1919, sec. 840, page 838; Miller v. Jackson City Bank, 198 N. W. 196. (3) The court, on appeal from a judgment for defendant, will confine its consideration of the conflicting evidence to its phase most favorable to the defendant. And must assume as the facts of the case those which respondent's evidence tends to establish as well as every reasonable inference therefrom. Griffin v. McDowell, 163 Mo. App. 84; Winter v. Spradling, 163 Mo. App. 77; Burton v. Chicago & A. Ry. Co., 176 Mo. App. 14; Brickwell v.

Williams, 180 Mo. App. 572. Objection that the verdict and judg-.. ment are for the wrong party and are contrary to the evidence, urged as grounds for new trial, cannot be considered on appeal as they merely go to the greater weight of the evidence. Byrd v. Vanderburgh, 168 Mo. App. 112. (4) Where no money or value passed at the time of the alleged purchase of the note a mere credit was given by the bank for the note and a promise to pay it; and where it is shown that this credit was never drawn upon before the maturity of the note, or before notice of the fraud, or failure of consideration, and the like, then the bank was not an innocent purchaser of the note for value and within the rule. Republic National Bank, St. Louis v. Bobo, 189 N. W. 176—Michigan case; Miller v. Jackson City Bank, 189 N. W. 996—Michigan case. (5) The general rule is that if there is a contract which has been reduced to writing, verbal evidence is not allowed to be given of what passed between the parties, either before the written instrument was made, or during the time of its preparation, so as to add to or subtract from, or in any manner to vary or qualify the written contract. But the general rule does not apply where fraud, want of consideration, and the like, are alleged as showing that the contract never had any legal validity. 1 Greenleaf on Evidence, page 284; Mossman v. Holsher, 49 Mo. 87. (6) Where the maker of a note shows that it was without consideration, the burden of evidence is on the purchaser of the note to show that he took the same in good faith, and for value and without any notice of infirmity in the instrument or defect in the title of the person who negotiated it. Bank v. Honks, 142 Mo. App. 110; Bank v. Tuttle, 144 Mo. App 294 and cases cited. (7) The law has shown its consideration for the honest purchaser of negotiable paper and surrounded bona-fide purchasers with every reasonable safeguard, but the legal maxim, *caveat emptor* applies as well to the purchaser of negotiable paper as to the purchaser of any other species of property. Bank v. Tuttle, 144 Mo. App. 294; Bank v. Hanks, 142 Mo. App. 110, and cases cited. (8) A negotiable note may be held in escrow the same as any other kind of paper, the only exception to the rule being that the endorsee of the note cannot be so hold it. The note sued on was never endorsed to the plaintiff. Simpson v. Van Landingham, 267 Mo. 286; Byrd v. Bank, 245 Mo. 286; Seibel v. Higham, 216 Mo. 121. (9) Appellant having tried this case on the theory that the consideration for the note sued on had failed when the defendant's application for stock was rejected, and that a new contract was entered into between plaintiff and defendant whereby the second certificate was issued in payment for the note, is bound here by such theory. Parties are to be held bound on appeal by the position they assume in the trial court. Harwood v. Toms, 130 Mo. 225; Tomilson, Administrator v. Ellison, 104 Mo. 105.

BRADLEY, J.—This action on a promissory note was commenced in Taney county. The venue was changed to Webster county where a jury trial resulted in a finding and judgment for defendant. Unsuccessful in motion for a new trial plaintiff appealed.

The petition is in the usual form. The answer pleads fraud, failure of consideration, nondelivery, and denied that plaintiff was a holder in due course. A reply put in issue the new matter set out in the answer.

The note sued on was dated February 3, 1921, due in six months, and was for $500, made payable "to myself or order" and was signed and endorsed by the defendant. The consideration for the note was stock in the Industrial Transportation Company, a chain store concern, which became bankrupt a short time after the note was given. Plaintiff contends that it purchased the note from the agent of the transportation company in due course. The note was signed and endorsed by defendant at a place near plaintiff bank. Immediately thereafter defendant and Frank Mills, the agent and representative of the transportation company, went to the bank and defendant explained to C. W. Moore, president of the bank, that unless a store was established at Hollister by the transportation company by April 1, 1921, and defendant's son-in-law, Vernon M. James, made manager thereof, the note was to be returned to defendant. Such was the agreement, according to defendant, between him and Mills, the agent of the transportation company. And, according to defendant, the note was not delivered and was not to be delivered, but was to remain in the bank in the nature of an escrow pending the establishment of the store and naming the son-in-law, James, as manager. James, the son-in-law, had also purchased stock in the transportation company and had given his note for $250 due in six months.

Plaintiff bank's evidence is that without knowledge of the alleged escrow agreement it purchased the note sued on and the James note and in payment issued its time certificate to the transportation company for $750 due in six months, but there was a notation on the margin of the certificate giving plaintiff bank the option to extend it three months. The transportation company rejected the certificate because of the extension notation and it was returned to Mills who took it to the bank and it was cancelled and another certificate due in nine months and of the same amount was issued to Scott & Alessi, other agents of the transportation company. The evidence of plaintiff tends to show that defendant was informed that the first certificate was refused and that he agreed that the second certificate should issue, and that he would take his chances of getting his stock through Scott & Alessi. Defendant denied such agreement, and denied knowing anything about a time certificate being issued to Scott & Alessi until after the transportation company was in bankruptcy. Scott & Alessi transferred the certificate issued to them to

the Hollister Banking Company of Springfield, Missouri, and it was paid at maturity by plaintiff.

The cause was submitted under an instruction given by the court of its own motion and we think that such instruction fairly submitted the issues. Plaintiff contends that an oral contemporaneous agreement cannot be interposed to defeat recovery on a promissory note and cities, among other cases, Peoples Bank of Ava v. Rankin, 282 S. W. (Mo. App.) 91. That case grew out of transactions quite similar to those in the cause at bar and involved the same chain store concern as is here involved. The law respecting an oral contemporaneous agreement is as plaintiff here contends, but defendant here is not relying upon an oral contemporaneous agreement, but is relying upon the nondelivery of the note. If the note was not delivered to the transportation company nor to anyone for it, then no contemporaneous agreement is involved and cannot be involved. It is always competent to show nondelivery or conditional delivery as between the original parties, and as to those with actual notice. Earle v. Woodruff, 274 S. W. (Mo. App.) 107, and such does not encroach upon the rule against oral contemporaneous agreements. A note is not a binding contract until delivered for the purpose of giving effect thereto and until so delivered is incomplete and revocable. [Sec. 803, R. S. 1919.] According to defendant's evidence the note was not delivered in the legal sense, but was to be left in plaintiff bank until the store was put in at Hollister and James put in as manager of said store, and that plaintiff's president was so advised at the time the note was taken to the bank by Mills and defendant. If such are the facts, and the jury so found, then no subsequent arrangement or agreement between plaintiff bank and Mills without defendant's knowledge and consent could give plaintiff the status of a purchaser in due course.

Several assignments of error are made, but it is not necessary to make separate disposition. There is no error which would justify a reversal. If defendant's evidence gives the correct version there is only one conclusion possible and that is the conclusion reached below. The judgment should be affirmed and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.

ON MOTION FOR REHEARING.

BRADLEY, J.—In the motion for rehearing it is urged that the note, after its execution was *delivered* to Mills before he and defendant went to plaintiff bank. Defendant testified: "The note was made out in Mr. Toon's restaurant; we went down to the Bank of Hollister, and Mills says to Charley Moore (plaintiff's president), 'Moore, I have got Mr. O'Brien's note here for $500, and his son-in-law's note for $250;' he says, 'I have given Mr. O'Brien an extension

220 Mo. App.—81.

of three months on the two notes to accommodate Mr. O'Brien;' he says, 'will that be all right with you?' Charley Moore took the note, read it over, he says, 'yes, that will be all right, sure that will be all right.' I had the receipt for the note. I says to him (Moore), 'Here don't you want to put that with the note, file it away?' He looked it over and said, 'I expect you ought to keep this, Mr. O'Brien.' Charley Moore said that, 'Hadn't they, Mr. Mills?'—addressing the agent; he said, 'Yes, you just keep that, Mr. O'Brien,' and he handed it back to me. Then I made the remark to Charley Moore there; I said, 'Now, Charley, unless this store goes in according to contract and my son-in-law is made manager of this store,' I said, 'Remember this note of mine don't go.' This man, Mills, he said, 'Well, Mr. O'Brien, this a foregone conclusion,' he said, 'Your son-in-law is going to be made manager of the store.' . . . Q. I would like for the witness to tell what he done with the note? A. I already told you I delivered it to Mills, and Mills and I went to the bank and he gave it to Moore and asked him if that would be all right with the extension of time on there, and Moore said sure it would be all right, and held it in his hand. Q. What was said down there at the bank about the note being held in the bank with the understanding that the note was to be held in escrow there? A. Moore was there; Mills was there, and I was there, and we turned the note into the bank with the understanding that the note was to be there in escrow.''

The answer last stated was, on motion, stricken out on the ground that it was a mere conclusion of the witness as to whether the note was left in escrow in the bank. Defendant was again asked: ''Q. Tell the jury what was said about the notes staying there in the bank? A. The notes were put there in the bank in escrow until such time''—The witness was here interrupted with another question, and defendant again moved that the escrow reference be stricken and it was ordered stricken. Defendant's counsel endeavored many times to have defendant testify that the note was merely left in escrow in the bank, but was blocked by the ruling that such evidence would be a mere conclusion. After all efforts to get this evidence in defendant repeated as to where the note was signed, etc., and then stated: ''Immediately after the note and receipt was executed *we* took the note and receipt down to the bank. He (Mills) carried the note in his fingers like that; I carried the receipt in my fingers, for the reason we had no blotter to blot them with; *we* carried them that way so not to blot them till we got to the bank. (Italics ours.) Witness again went over what was said when they arrived at the bank, and stated that the note was to remain in escrow until the store contract was fulfilled. The escrow reference was again stricken. Counsel shifted the position of the word *escrow* and asked: ''When you placed the note in escrow, what was said about it? The note

was put in there, given to Moore, and I told him then, I said, Now, Moore, unless this store is put in here according to contract and my son-in-law is made manager of the store, this note of mine don't go.''

The issue on delivery was submitted and properly so in the instructions. It was perhaps correct for the court to rule as it did respecting the statement of defendant that the note was placed in the bank in escrow. But if the note was placed in the bank and there to remain until the store was put in and the son-in-law made manager, then it was placed in escrow and was not in a legal sense delivered to Mills or the bank either. The mere fact that Mills carried the note ''in his fingers'' from the restaurant to the bank is not conclusive that the note was delivered in the legal sense. It is true that defendant said that he ''delivered the note to Mills and Mills and I went to the bank.'' But this has reference to the occasion when Mills carried the note ''in his fingers'' from the restaurant to the bank. If the note was delivered in a legal sense, then why should Mills and defendant go to the bank together and there, in the presence of Mills, defendant tell plaintiff's president Moore the conditions upon which the note was executed, and that unless these conditions were fulfilled ''this note of mine don't go?''

If defendant's version is the correct one, and the jury so found, then the note was not delivered in the sense that title passed as we held in the original opinion.

We find no reason to disturb our original ruling. The motion for rehearing is, therefore, overruled. *Cox, P. J.,* and *Bailey, J.,* concur.