Louis A. Popovsky, Respondent, v. Wasco Griwach, Appellant, No. 41948—238 S. W. (2d) 363.

Division Two, April 9, 1951.

J. W. *Thurman* for appellant.

*H. L. C. Weier* for respondent.

1122

[364]· BARRETT, C.—In this suit to recover a balance of $8,800 on a $20,000 note the trial court has found for the plaintiff. Upon this appeal, as upon the trial of the case, the defendant relies upon three principal defenses: (1) that the note, as between the parties, is without consideration; (2) that the plaintiff by accepting $10,000 in cash and two notes totaling $10,000 renounced the note and is estopped to claim that the defendant is liable or obligated on the instrument; (3) that there was no delivery of the instrument for the purpose of giving effect thereto as a note but that it was delivered for a special purpose only. The cause was tried without a jury and since it is to be reviewed here upon both the law and the evidence as a suit of an equitable nature (Mo. R. S. 1949, Sec. 510.310) it is urged that the finding and judgment of the trial court is not supported by the evidence, is against the weight of the evidence, and, therefore, this court should make a contrary finding and require the entry of a judgment for the defendant on the note. Gershon v. Ashkanazie, 239 Mo. App. 1012, 199 S. W. (2) 38.

The $20,000 note originated in these circumstances: The defendant, Griwach, a licensed tavern keeper in Crystal City, was acquainted with a firm of wholesale liquor dealers, Schulte & Long, in St. Louis. In July 1946 their salesman, Mauck, informed him that upon an investment of $40,000 in bonded whiskey there was some money to be made. Griwach did not have $40,000 but knowing that his friend Popovsky was "interested in making an investment" he contacted

him and proposed that they make the investment, each advancing the sum of $20,000. The "deal wasn't exactly over the table.' The O. P. A. was going off the next day. There was some O. P. A. prices involved in the deal and bottled in bond whisky was scarce.'' According to a statement by Griwach they were to make twelve to fourteen thousand dollars in three or four months. The salesman said that they were to double their money. The whisky was in a warehouse in Kentucky and it was the understanding of Popovsky and Griwach that they were buying seventy-five barrels of whisky. The salesman said that they were not buying [365]seventy-five barrels of whisky but were buying $40,000 worth of the seventy-five barrels which bottled out 1132 cases at seventy-two dollars a case, about $80,500 worth of whisky.

Popovsky obtained two checks from his banks, one for $12,000 and another for $8,000 and he and Griwach went to the wholesaler's office in St. Louis. When they got there Griwach did not have $20,000. He had but $4,800 in cash and he and the wholesalers executed a $15,000 note to the Boatmen's Bank. Popovsky said: "I left my checks on the table. I had two checks. I don't know who endorsed them after I endorsed them or who took them. After I saw the deal wasn't going so good, I was suspicious. I wanted something there on black and white I said and Griwach gave me the $20,000 note." Griwach and the salesman say that the $20,000 note was merely to show that Popovsky had invested that amount in whisky and that it was merely a "receipt." Popovsky did not have a liquor license of any kind and, of course, the wholesaler could not sell him the barreled whisky or transfer warehouse receipts to him and the note was simply to evidence the fact of the investment. But Popovsky said, "Yes, if he did not sign it I was going to take my checks and not go in the deal. He was to put in the same amount of money and Mr. Schulte did not give us any bill of sale and I knew there was something wrong. I asked Griwach to sign the note. After he signed it, I did not have anything to worry about. Griwach had two taverns. * * * and I knew he would make it good if anything went wrong. If he signed this, I was going to leave my checks there."

After Griwach signed the $20,000 note, on July 24, 1946, left the $4,800 in cash and the $15,000 note and Popovsky left his $20,000 it was assumed that the deal was closed. The following day Popovsky and Griwach entered into a "joint adventure agreement" in which it was recited that "First Party (Griwach) has heretofore purchased on behalf of First and Second Parties hereto seventy-five (75) barrels of bottled in bond bulk whiskey" that they were each the owners of a one half interest in the whisky, were to share the expense of bottling and to share in the profits equally. How the whisky had been paid for was not mentioned, neither was the $20,000 note mentioned and there was no reference to any losses the parties might

1124

sustain. Since Griwach had a tavern license it was his and Popovsky's view that the wholesalers had transferred the title to seventy-five barrels of whisky to Griwach. It is a fair inference from the record, as a matter of fact, that neither warehouse receipts nor whiskey were transferred, however. The whisky had to be withdrawn from the warehouse, bottled and additional taxes paid. In any event, in January 1947 the wholesalers gave Griwach a check for $5,000 and he endorsed the check and gave it to Popovsky. In July 1947 the wholesalers gave Popovsky $3,500 and sometime later sent him $1,500 worth of whisky and in this manner his "investment" was reduced $10,000. After that both Popovsky and Griwach frequently called on the wholesalers for more money and they paid Griwach $3,200. Griwach told Popovsky that he "just dropped the ($15,000) note." It was paid, apparently, by the wholesalers as the bank had a mortgage on the whisky. But in this manner Griwach's investment was reduced to $1,400. Griwach and the saleman claim that Popovsky and Griwach resold the whiskey to the wholesalers for a profit of $1,000 each. Popovsky admits that the wholesalers were to sell the whisky but denies that they resold it to them. Finally the wholesalers gave Popovsky two notes, one for $8,000 and another for $2,000. They paid him $1,200 on these notes and thus his "investment" was reduced to $8,800. Popovsky sued Schulte and Long on the notes and they went into bankruptcy and this suit against Griwach for the balance of $8,800 followed.

 This is a suit by the payee, Popovsky, against the maker, Griwach, and, of course, Popovsky is not a holder in due course (Mutual Life of Illinois v. McKinnis, (Mo. App.) 15 S. W. (2) 935, 936) and the note is subject to the defense of absence or failure of consideration. Mo. R. S. 1949, Sec. 401.028. Griwach points to the statute, Section 401.025, which defines "value" as "any consideration sufficient to support a simple [366] contract" and the rule that there "must be a benefit to the promisor, or a loss or detriment to the promisee" (Glassbrenner v. Morgan, (Mo. App.) 296 S. W. 201, 202) and insists, under the facts, that neither of these elements is present in this case. But the instrument on its face is a completely executed note and "is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value" (Mo. R. S. 1949, Sec. 401.024) and the burden is upon the defendant to show the absence or failure of consideration. People's State Bank v. Hunter, 216 Mo. App. 334, 264 S. W. 54. Here Popovsky's money, $20,000, was not advanced to the partnership or "joint adventure" (Thompson v. McCune, 333 Mo. 758, 765, 63 S. W. (2) 41, 43) but if it was not to be "left," as he said, or advanced to the wholesalers or invested unless and until Griwach gave him (Popovsky) his note there was consideration for the note. Hackett v. Dennison, 223 Mo. App. 1213,

19 S. W. (2) 541; Nelson v. Diffenderffer, 178 Mo. App. 48, 163 S. W. 271. "The fact that the defendants received no part of the loan, is not sufficient to discharge them. Any expense, trouble or inconvenience experienced by the plaintiff, makes the consideration valuable in law." Madison County Bank v. Graham, 74 Mo. App. 251, 256.

The defense of renunciation and estoppel is based upon Popovsky's acceptance of the two notes, the $2,000 note and the $8,000 note, from Schulte and Long and his receipt of cash in the total sum of $12,200. It is insisted from these facts and from Popovsky's conduct that he renounced Griwach's note and is estopped to claim that the instrument is a note. But there was no accord and satisfaction (Barber v. Mallon, (Mo. App.) 168 S. W. (2) 177) and there was no surrender of the original note and a substitution of new notes as was the case in Meinholtz v. Lampert, (Mo. App.) 101 S. W. (2) 503. The renunciation statute, Sec. 401.122, provides in part, that "The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. * * * A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon." Popovsky did not deliver the instrument up to Griwach and there was no writing indicating an intention on his part to renounce the instrument within the meaning of the negotiable instruments law as there was in English v. Evans, (Mo. App.) 157 S. W. (2) 793. "There is no conflict of authority, under this section (401.122), on the proposition that a voluntary renunciation, that is, one without consideration, must be in writing in order to be effective, or the instrument itself must be delivered up to the person primarily liable thereon." Annotations 121 A. L. R. 1353; 69 A. L. R. 846. There was no agreement between Popovsky and Griwach as to Popovsky's acceptance of the two notes from Schulte and Long and his receipt of the payments of $12,200. 40 Am. Jur., Sec. 102, p. 787. The acceptance of the notes of Schulte and Long, in the absence of an express agreement, did not constitute payment or a renunciation of Griwach's note. Appleton v. Kennon, 19 Mo. 637; Hansen v. Duvall, 333 Mo. 59, 74, 62 S. W. (2) 732, 738.

Griwach does not claim that the note was not in fact physically delivered to Popovsky. See Pounds v. Farmers' Union Merc. Co., (Mo. App.) 190 S. W. 374; Fraker v. Calvey's Estate, (Mo. App.) 259 S. W. 509. There is no evidence that the note was executed and delivered conditionally or that its effectiveness or noneffectiveness as a note was dependent upon some contingency. Bank of Hollister v. O'Brien, (Mo. App.) 290 S. W. 1009; Moore v. Leach, (Mo. App.) 14 S. W. (2) 21; Cahill v. Byng, (Mo. App.) 30 S. W. (2) 768. His defense that there was no "delivery of the instrument for the purpose of giving effect thereto" (Mo. R. S. 1949, Sec. 401.106) is that the note was a mere receipt to evidence the fact that Popovsky had $20,000 invested in the liquor transaction and that he was not

obligated upon the instrument as a note and was not to be called upon in any event to pay it. It is in this connection that he insists that the trial court's finding is against the weight of the evidence. The day following the execution of the note there was a written "joint adventure agreement" but the note was not mentioned and there was [367] no mention of possible losses. Considering the note and written agreement as the contract between the parties (Trautman v. Schroeder, 230 Mo. App. 985, 93 S. W. (2) 303) the agreement does not in any manner modify or change the terms of the note. Compare: J. B. Colt Co. v. Gregor, 328 Mo. 1216, 44 S. W. (2) 2. "If one partner give the other his promissory note * * * an action at law will lie on such note or bill, since such an instrument itself constitutes an acknowledgment of a separate debt." Annotations 21 A. L. R. 21, 65; 58 A. L. R. 621; 168 A. L. R. 1088.

Griwach says that when the written agreement was executed he asked Popovsky about the note and Popovsky told him that it had been destroyed. He points to his own and to Mauck's testimony that the instrument was not to become effective as a note and insists that their testimony is corroborated by the circumstances and the inconsistencies and improbabilities in Popovsky's testimony. Without modifying or altering it, we lay to one side the general rule that "evidence is inadmissible to show a prior or contemporaneous oral agreement that one who signed a negotiable paper should not be bound thereby, or that he would not be called upon to pay the same." Annotations 75 A. L. R. 1519; 54 A. L. R. 702, 716; 20 A. L. R. 421. Jones v. Shaw, 67 Mo. 667, was a suit on a $400 note. The plaintiff and the defendant had dealt in hogs as partners and the defendant asserted in defense of the note that it was a mere memorandum, not an evidence of an absolute indebtedness and in the event of losses they were to be shared equally and that there were losses of $1,400. It was pointed out in that case, as is the fact here, that no equitable relief was asked and that the action was not one for a partnership accounting. It was there held that the note was an absolute and unconditional promise to pay the sum specified and that parol evidence was inadmissible to show that the note was not to be paid. In Harms v. Long, (Mo. App.) 213 S. W. 507, the note grew out of the sale of a saloon in which the plaintiff and the defendant had been partners and, according to the defendant, one of the purposes of the note was to conceal the fact that the plaintiff did not have a liquor license. In any event, it was asserted that there was no consideration for the note and that it had been agreed that there would be no attempt to collect it. It was held that want of consideration could be shown but that the defendant maker could not show, though he executed the note, it was at the time agreed that he need not pay it. See also Hackett v. Dennison, supra, and Bass v. Sanborn, 119 Mo. App. 103, 95 S. W. 955.

Here the parties, for the most part, ignored the rules of evidence. The defendant admits the execution of the note and the plaintiff's testimony, if it is to be believed, shows consideration, an absolute and unconditional promise to pay the sum set forth in the note and an unqualified delivery of the instrument as a note. The burden was upon Griwach to show that the instrument was not delivered as a note and that there was no consideration for it. Gordon v. Raymond, 239 Mo. App. 321, 186 S. W. (2) 849. If his evidence is believed and accepted the instrument was a mere receipt, not delivered as a note, and there was no consideration for it. This issue is dependent solely upon the credibility of the witnesses. Treating this issue and the assertion of estoppel as appropriate issues of fact, in reviewing the cause as one of an equitable nature, it may not be confidently asserted that the trial court's finding is against the weight of the evidence. Toedtman v. Grass, (Mo. App.) 116 S. W. (2) 153.

Accordingly the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.