**CUSTOM HEAD, INC., Plaintiff-Respondent,**

v.

**Charles P. KRAFT, Defendant-Appellant.**

No. 24800.

Kansas City Court of Appeals.

Missouri.

April 1, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 3, 1968.

Application for Transfer Denied Sept. 9, 1968.

Charles White Hess, Charles W. Hess, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for appellant.

Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an action based upon a promissory note. The court sitting without the aid of a jury entered judgment for plaintiff in the amount of $7,766.24. Defendant has appealed.

Plaintiff, Custom Head, Inc., is a Missouri Corporation having its office in Springfield, Missouri.

In July, 1960, Kraft Trailer Sales, Inc., a Kansas Corporation doing business in Kansas City, Kansas, owed plaintiff approximately $12,000 on a past-due open account. The stockholders of this corpora-

tion were defendant, Charles P. Kraft, his wife, Dona Kraft, defendant's father, and Everett Seward. Seward owned fifty per-cent of the stock. Defendant was Presi-dent and principal executive officer of the corporation.

In late July or early August, 1960, Dor-sey Dysart, plaintiff's sales manager, dis-cussed the indebtedness with defendant and Seward. As a result of these discussions, defendant offered to plaintiff, as security for the account and to obtain plaintiff's for-bearance, three promissory notes, including one purportedly signed by Cline Bailey, which were payable to Kraft Trailer Sales, Inc. Plaintiff agreed to the offer and the three notes were endorsed with recourse by defendant as agent for the corporation.

On September 22, 1960, Dysart wrote Cline Bailey notifying him that his note, payable to Kraft Trailer Sales, Inc., had been assigned to plaintiff. An exchange of correspondence between Dysart and Bailey followed, which terminated when Cline Bailey, by hand-written note on Dysart's August 2, 1961, letter, stated:

"Dear Mr. Dysart: I wrote you a letter since that date and told you that it is not my writing and I did not sign no note with Kraft. He just signed my name to it. I don't care if you put him in jail, or what you do to this man. It's okay by me."

Sometime subsequent to August, 1961, and before March, 1963, defendant received a copy of this letter and Bailey's remarks. The evidence shows that Seward signed Cline Bailey's name to this promissory note, and that defendant was aware that the note was not executed by Cline Bailey.

During 1961 and 1962, plaintiff received some payments on one of the promissory notes, could not locate the maker of an-other note, and received no payment on the Cline Bailey note.

In mid-February, 1963, Nick Van Gelder, plaintiff's Business manager, discussed the open account and the status of the security with defendant and Seward in Kansas City and St. Joseph. At that time Kraft and Seward offered another Cline Bailey note or a personal note for security in exchange for the return of the Cline Bailey note. The latter proposal was accepted by Van Gelder and he returned to Springfield to have the necessary paper prepared. After the note was prepared Van Gelder ex-changed telephone conversations with de-fendant concerning the transaction and read the note to defendant so that when they met to sign the note there would not be any dispute.

On March 5, 1963, Van Gelder met de-fendant, Dona Kraft and Seward at the air-port in Kansas City. At that time defend-ant Seward and Dona Kraft executed the promissory note sued upon. Van Gelder then handed defendant the promissory note of Cline Bailey and a letter memorandum of the occasion.

The note sued upon is in the face amount of $5,792, with interest from date at the rate of six per-cent per annum. The first payment of $1931 was to become due on August 14, 1964. The makers agreed to pay a reasonable attorneys fee in the event the note was placed in the hands of an attorney for collection.

After execution of the note defendant made no attempt to contact plaintiff until August 7, 1964, when defendant wrote plain-tiff advising that it was impossible to make the first payment on the note and offered certain alternatives.

Defendant's first contention is that the court erred in finding that he "personally received consideration from Custom Head for the execution and delivery of his per-sonal note herein sued upon for the reason that there were no facts in evidence which would support a finding that there was any consideration given to Kraft for the note."

The trial court in its conclusions of law ruled that: "The bargained-for surrender by plaintiff of its right as a holder in due course of the Cline Bailey note and any rights against Bailey, Kraft Trailer

Sales, Inc., Kraft, individually, or Seward, individually, it claimed or had as a result of the transfer and negotiation of the Cline Bailey note in 1960, was legally sufficient consideration for the personal note sued upon."

Initially, it should be noted that: "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value." Sec. 401.024 V.A.M.S. 1959.

 "Valuable 'consideration' may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or responsibility given, suffered or undertaken by the other." Charles F. Curry and Co., v. Hedrick, 378 S.W.2d 522, 533, Mo.Sup. And, "any expense, trouble or inconvenience experienced by the plaintiff makes the consideration valuable in law." Popovosky v. Griwach, 361 Mo. 1120, 238 S.W.2d 363, 366.

In support of his contention defendant relies upon the cases of Allen West Commission Co., v. Richter, 286 Mo. 691, 228 S.W. 827, and Glassbrenner v. Morgan, 296 S.W. 201, Mo.App. The first, on its facts, is distinguishable from the instant case. The second is in accord with the rule which governs this case.

In the case of Thompson v. McCune, 333 Mo. 758, 63 S.W.2d 41, 44, it is said:

"It is well settled that when a person interested in a firm, corporation or business enterprise as a partner or stockholder gives his individual note for money loaned or advanced to such firm, corporation, or business, such note is 'not without consideration. The furnishing of the money to the firm, corporation, or business in which the maker of the note has an interest itself furnishes a consideration. Holland Banking Co. v. Griggs, 323 Mo. 289, 295, 19 S.W.(2d) 290, 292; First National Bank v. Henry, (Mo.App.) 202 S.W. 281; People's State Bank v. Hunter, 216 Mo.App.

334, 264 S.W. 54. Under such facts there is both a consideration by way of detriment to the payee or person furnishing the money as well as a benefit to the promisor."

Later cases announcing the same rule are Farm & Home Savings & Loan Ass'n v. Theiss, 342 Mo. 40, 111 S.W.2d 189, 191, and Baum v. Abel, 379 S.W.2d 164, 166, Mo.App.

As to the second case here relied upon by defendant the Supreme Court said in the *Thompson* opinion, supra: "We do not regard the holding in Glassbrenner v. Morgan, (Mo.App.), 296 S.W. 201, as in conflict with our present holding."

The fact that defendant Kraft and Seward were stockholders distinguishes the instant case from the *Allen West Commission Co.* case, as was pointed out by this court in its opinion in the case of Globe Indemnity Co. v. McDowell, Mo.App., 159 S.W.2d 822, where it was said: " * * * it was not shown (in Allen West) that defendant was a stockholder of the debtor corporation at the time the debt was incurred."

 Following the Supreme Court's ruling in the *Thompson* case, supra, as we are compelled to do, results in the denial of defendant's contention.

Defendant's remaining contention is that the court erred in failing to find that defendant clearly established that the giving of the personal note by him was the result of threat of criminal prosecution amounting to coercion and duress.

The leading case on duress as a defense in Missouri seems to be Weisert v. Bramman, 358 Mo. 636, 216 S.W.2d 430, where the court stated:

"The modern rule of duress as established by the above cases is that 'duress is to be tested, not by the nature of the threats, but rather by the state of mind induced thereby in the victim'; and that ultimate fact in issue is whether the al-

leged injured party was bereft of the free exercise of his will power; and of which, the means used to produce such state of mind, the age, sex, capacity, situation, and relation of the parties, are all evidentiary. * * * However, it is also the general rule that a claim of duress cannot be sustained where there is full knowledge of the facts of the situation and ample time and opportunity for full and free investigation, deliberation and reflection."

■ Initially, it should be noted there is no evidence that plaintiff's agents or representatives made any statements whatsoever to defendant Kraft that could have possibly placed defendant in a position where he was "bereft of the free exercise of his will power." The trial court found and plaintiff does not dispute that sometime during the period from September, 1961 to February, 1963, Kraft obtained possession of a copy of the Dysart letter of August 6, 1961, which contains the pencilled thoughts of Cline Bailey as to what to do with Seward and Kraft. Nick Van Gelder did not recall sending that letter to Kraft at all, and as far as he knew Kraft did not have knowledge of the letter. Likewise, Dysart did not recall sending a copy of Cline Bailey's remarks to Kraft, but Dysart advised that possibly plaintiff's attorney, Mr. Farrington, might have sent it to Kraft. It is significant that defendant could not recall when he received this letter. His testimony was:

"Of course, we received or I received this letter. The time that I received it or any cover letter, or to whom individually within the Kraft organization, I don't recall. Otherwise, we wouldn't even know of its existence today, if we hadn't received one."

Other than this defendant could only guess as to when he received it. As both Van Gelder and Kraft admitted, no statements like this were made at the airport when the note was executed, because the conversation was brief and to the point.

Further, there is no evidence in the record from which it can be said that defendant Kraft was acting "bereft of the free exercise of his will power." Indeed, the evidence affirmatively shows the contrary. First, defendant had at least three weeks from the conversation with Van Gelder in mid-February to March 5, during which to "investigate, deliberate and reflect upon the execution of the" note. During this three-week period, Van Gelder called Kraft and read the note to him on the telephone. Thus, it is clear that the claim of duress "cannot be sustained where there is full knowledge of the facts of the situation and ample opportunity for full and free investigation, deliberation and reflection." *Weisert*, supra. Kraft testified that he was a businessman, age 39; that he had been in business as the major executive officer of several businesses for nine years prior to signing the note. It cannot be inferred from this evidence that this experienced businessman was bereft of his free will power for three weeks to a month.

Finally, the lack of action or the actions taken by defendant Kraft after executing the note established that duress was not present. In *Weisert*, supra, the court stated:

"Moreover, we think there is another reason why the Court should have directed a verdict in this case. A party, who is entitled to avoid a contract on the ground of duress, should repudiate it promptly after the duress has been removed. Silence and acquiescence for a considerable period thereafter, action in accord with it, and acceptance of benefits under it, amount to a ratification."

■ Thus, the record is clear that defendant Kraft at no time repudiated the note. He remained silent from March 5, 1963 to August, 1964, and then sent a letter to the plaintiff acknowledging the note and making certain proposals concerning its disposition. This silence and acquiescence for over eighteen months and recognition of the note after eighteen months amounts to

a ratification, thereby nullifying any defense of duress.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.