Henry W. EDMISTON, Director, Division of Insurance, Dept. of Consumer Affairs Regulation and Licensing, State of Missouri, Receiver for Medallion Insurance Co. and Missouri General Insurance Co., Plaintiff-Appellant,

v.

J.C.G.–MEDALLION, INC. et al., Defendants,

Emerald Financial Corporation and Arthur E. Curtis, Trustee, Movants-Respondents.

No. KCD 29154.

Missouri Court of Appeals, Kansas City District.

July 31, 1978.

John C. Craft, William C. Jolley, Jr., Kansas City, for plaintiff-appellant and Medallion Receivership.

Duke W. Ponick, Jr., Kansas City, for movants-respondents.

Before SHANGLER, P. J., WASSER-STROM, J., and CLARK, Special Judge.

SHANGLER, Presiding Judge.

This action by Emerald Financial Corporation to exercise the power of sale under a deed of trust which secures the promissory note of Medallion Insurance Company and Missouri General Insurance Company then in default was incident to a proceeding by Edmiston, Director of the Division of Insurance of Missouri, to enjoin further transaction of business by Medallion and Missouri General and to order the liquidation of these insurance companies. The circuit court entered an order of approval for Emerald to fully exercise its power of sale of the security. Edmiston, as statutory receiver of the Medallion and Missouri General companies, appeals on the contention that the promissory note which the deed of trust purports to secure was without consideration.

The disputed note transaction was the culmination of a reticulated train of stock and fiscal maneuvers meant to relieve the straits of the principal actors.

On May 25, 1975, Medallion Insurance Company and Missouri General Insurance Company executed their promise to pay the Emerald Financial Corporation $83,898.71 and secured that undertaking by a deed of trust on real estate. The May 25, 1975, note was the renegotiation and consolidation of two prior indebtednesses. The first was a demand note for $40,000 dated December 3, 1974, executed by the two insurance companies to Emerald for money received. The second was a note for $42,-773.71 dated December 31, 1974, executed by J.C.G.–Medallion, Inc. [full owner of both the Medallion and Missouri General companies] which promised payment of $25,000 on demand after March 1, 1975, and the balance due on January 1, 1978. The consideration for the note was the transfer of stock of the Spectrum Services Corporation, a computer services company, to J.C.G.–Medallion. The parent company, J.C.G.–Medallion, in turn, donated the stock to the capital and surplus of wholly-owned Medallion and Missouri General insurance companies. Both notes fell into default.

On May 9, 1975, J.C.G.–Medallion and Emerald by separate instrument agreed to terms of renegotiation. J.C.G.–Medallion promised to pay Emerald on or before May 25, 1975, the sum of $43,898.71 [the face amount of the December 31, 1974, note plus interest] and concurrently Emerald promised to lend that sum of money to Medallion and Missouri General. The agreement specifically acknowledged the December 3, 1974, note by Medallion and Missouri General for $40,000, also in default, consolidated that indebtedness with the new obligation by Medallion and Missouri General for $43,898.71 and secured them both by a deed of trust on the same property already pledged for the performance of the $40,000 note. The agreement of May 9, 1975, cul-

minated in the promissory note transaction of May 25, 1975,—now in dispute—whereby Medallion and Missouri General promised to pay Emerald $83,898.71.

The receiver Edmiston contends that the consideration failed on both aspects of the transaction—the promise to pay the antecedent $40,000 indebtedness and the new $43,898.71 obligation. As to the $40,000, the receiver Edmiston contends that loan was an incident to a scheme for corporate reorganization for which the consideration failed—or at least was not altogether regular.

The receiver refers to an agreement for exchange of stock between J.C.G.–Medallion and Emerald whereby the control of each corporation was, in effect, given over to the counterpart. That investment agreement was the attempt by J.C.G.–Medallion to extricate the financial difficulties of its subsidiaries, the Medallion and Missouri General insurance companies. The terms of the contract called for J.C.G.–Medallion to purchase from Emerald 270,000 shares of Financial Corporation of North America [FINCO] for $100,000. This purchase was transacted by the remittances and personal notes of the investors, among them two checks for $40,000. These checks were endorsed by Emerald to Medallion and deposited in the joint account of the Medallion and Missouri General insurance companies and their promissory note of December 3, 1974, issued to Emerald. The receiver asserts, however, that the consideration for the $40,000 note failed after deposit because that money was withdrawn by J.C.G.–Medallion to pay for the FINCO stock and thus to finance the change of ownership of the holding company.

The trial court found consideration for the $40,000 antecedent obligation of the note and we sustain that determination. There is no dispute that the sum which the note recites as consideration was actually deposited in the account of the two insurance company obligors. Nor is there doubt that the note transaction of December 3, 1974, was separate from the investment agreement of November 15, 1974. There is no condition in that agreement that the loan money paid to the insurance companies shall be used for the obligation of their parent company to Emerald for the FINCO shares. Nor does the evidence support the suspicion of the receiver that the holding company used this money of the subsidiaries to *overpay* Emerald. Rather, from what appears, the transaction between J.C.G.–Medallion and Emerald for the FINCO investment was value for value. The antecedent obligation by the Medallion and Missouri General insurance companies to pay Emerald $40,000 on demand was on full consideration and was sufficient under the express provision of § 400.3–408, RSMo 1969, to support—pro tanto—the renewed obligation of May 25, 1975. Additional consideration was furnished by the change of terms which extended the time for payment from demand to a five-year period. *Cox v. Sloan,* 158 Mo. 411, 57 S.W. 1052, 1055 (1900).

The disputed promissory note of May 25, 1975, for $83,898.71 also recites a new obligation of $43,898.71 by the Medallion and Missouri General insurance companies to Emerald. The receiver contends that the new indebtedness also was incurred for a consideration denoted but not given. The note recites that the $43,898.71 was lent to the insurance companies in cash, but was actually given in the form of a check in that amount payable to Emerald by J.C.G.–Medallion and endorsed by Emerald with recourse to the Medallion and Missouri General insurance companies.[1] At the time the check was drawn the J.C.G.–Medallion treasurer informed the principal officer [Nash] that there were insufficient funds but Nash assured both his treasurer and Emerald

---

1. The check from J.C.G.–Medallion to Emerald represented quittance for the December 31, 1974, note indebtedness with interest to Emerald for the Spectrum Services Corporation shares. It was a condition of the Loan Agreement which preceded the consolidation and re-

negotiation of the two earlier notes that Emerald would upon receipt of the $43,898.71 payment from J.C.G.–Medallion lend that sum to the Medallion and Missouri General insurance companies.

that money was forthcoming and Emerald accepted the check on that assurance. The Medallion and Missouri General insurance companies received but did not deposit the check because that J.C.G.–Medallion account was never thereafter sufficient.

The receiver contends that the consideration recited in the note eluded the obligors Medallion and Missouri General; that instead of the *cash* recited on the face of the note, the carriers received only a check which could not be negotiated for want of sufficient funds and which by its terms became void ninety days after issue and so lapsed.

■ A negotiable instrument imports that it has issued for a valuable consideration given or received. *Sloan v. Paris,* 541 S.W.2d 316, 320[3] (Mo.App.1976). The receiver has not disputed the execution of the May 25, 1975, promissory note by Medallion and Missouri General but contends that the indebtedness was incurred for a consideration which failed. The burden to prove that issue—an affirmative defense—was on the receiver who stands as the maker of the instrument. *Fitzgibbon Discount Corporation v. Hatchett,* 427 S.W.2d 786, 789[4, 5] (Mo.App.1968). A *consideration* within § 400.3–408 may consist of some benefit to one part or some detriment to the other. *Custom Head, Inc. v. Kraft,* 430 S.W.2d 593, 595[1, 2] (Mo.App.1968).

■ There can be no doubt that Emerald suffered a detriment by the discharge of the J.C.G.–Medallion note [already in default by $25,000] for the new Medallion and Missouri General promise. It allowed the makers the additional benefit of a five-year installment payment in the place of the more restrictive demand and time provisions of the original December 3, 1974, obligation. That the makers of the new note, Medallion and Missouri General, may have not benefitted does not diminish the detri-

ment suffered by Emerald or make the consideration any less valuable. *Popovsky v. Griwach,* 361 Mo. 1120, 238 S.W.2d 363, 365[1–6] (1951).

The current of the contention the receiver makes, both on the premise of failure of consideration and on principles of public policy, reiterates that the promissory note of May 25, 1975, [here in dispute] was but one incident of a concatenated transaction to change the control of J.C.G.–Medallion and its subsidiary insurance companies to Emerald Financial Corporation to the previous counterpart owner.[2] That is, J. C. Greene, sole owner and principal officer of J.C.G.–Medallion and of Medallion and Missouri General, wholly-owned subsidiaries, by an exchange of shares with Emerald Financial Corporation became the owner and principal officer of Emerald. Nash, who was brought in by Greene to restore the finances of the insurance companies, became owner and principal officer of J.C.G.–Medallion. The receiver contends that the note of May 25, 1975, was a breach of fiduciary duty by Greene to the insurance companies. There can be no doubt, however, that Greene had formally resigned any office or directorship in J.C.G.–Medallion and the two held insurance companies several months before the May 25, 1975, promissory note transaction between these former interests and Emerald, which he then owned and represented.

The receiver contends, however, that his fiduciary duty to J.C.G.–Medallion and the insurance companies extended beyond his actual service as director and officer and required him to do nothing to impair the capital of the insurance companies he earlier directed. This argument assumes again that the two notes which the May 25, 1975, obligation consolidates were integral to the change of control sequence and so, however formally valid the consideration for each prior note, they—and the subsequent May

---

2. The change of control finally wrought by the complicated events we have already, but incompletely, described was from J. C. Greene as owner and principal officer of J.C.G.–Medallion [which wholly held and controlled Medallion and Missouri General] to Nash while, in the process by an exchange of stock, Greene became the owner and principal officer of Emerald Financial Corporation. At one time, briefly, Emerald became the sole shareholder of J.C.G.–Medallion.

25, 1975, obligation which embodies them— were also affected by the action of Greene in his former status as director, whatever his actual role.

This theme of fiduciary breach neither appears in the pleadings [except by general allusion], nor was presented to the trial court as such, nor was asserted in the post-trial motion of the receiver to correct the judgment, but is pressed originally on this appeal. If we may assume that the fiduciary issue somehow was implicitly tried, then we are bound to find the evidence on that issue most favorably to the judgment entered—that there was consideration for the May 25, 1975, note and therefore no breach of duty by Greene as director of the insurance companies. There is no evidence that the execution of the original notes by Greene was other than with the full corporate authority of the Medallion and Missouri General insurance companies and of the J.C.G.–Medallion holding company. Those transactions, however ineffectual, were intended to restore the insurance companies to financial health and were without motive to denude either subsidiary of capital—as the receiver suggests.

The insurance carriers received benefit from each promissory note transaction. The full $40,000 cash from the December 3, 1974, promissory note was deposited in their joint account; all the shares of Spectrum Services Corporation purchased with the $42,733.71 December 31, 1974, promissory note was donated to the capital account of the insurance companies and the J.C.G.–Medallion check paid to Emerald [to discharge the December 31, 1974, note and purchase of the Spectrum shares] was endorsed with full recourse to the two insurance carriers. There is no evidence that the assurance by Nash [for J.C.G.–Medallion] to Greene [for Emerald] that the necessary funds to validate the $43,898.71 check were forthcoming from another business source was other than in good faith. There is no explanation why the insurance carriers never deposited the check or why they never sought recourse against the Emerald endorsement. Certainly, contrary to the intimations of the receiver, Greene can be charged with no

fiduciary dereliction for the failure of the insurance companies to assert their rights on the check against Emerald. The judgment of the trial court that the note of May 25, 1975, for $83,898.71 was supported by consideration and that the second deed of trust executed by the Medallion Insurance Company to secure that obligation was valid rests on substantial evidence.

 The role of the receivership court in the foreclosure of the Medallion Insurance Company property *in custodia legis* pledged for an obligation then in default remains to be defined. A receiver takes only those rights had by the estate to which he succeeds and so acquires possession or title subject to all liens and equities which affect the property at the time the receiver assumes authority, *Parsons v. Third National Co.,* 230 Mo.App. 1114, 94 S.W.2d 1057, 1060[1] (1936); 75 C.J.S. Receivers § 138; Clark on Receivers (3rd ed.) §§ 269, 354. While a prior lien is not affected by the appointment of a receiver over the property, a lien creditor may not disturb the possession of the court without its permission. That requirement arises more from considerations of decorum than from any authority of a receivership court to deny foreclosure of a valid prior lien. It allows a court an informed supervision over the affairs of the receivership property. Thus, the receivership court may affect the remedy of the lienholder but not divest the right. To forbid altogether the foreclosure of a valid lien extant prior to the assumption of the receivership authority impairs the obligation of contract and defeats, without consent, a vested right of property. Clark on Receivers (3rd ed.) § 976; *Philadelphia Trust Co. v. Northumberland County Traction Co.,* 258 Pa.St. 152, 101 A. 970, 973[1, 2] (1917). When, however, the contract allows a lienholder a specific remedy on default [in this case, the right to foreclose the security by nonjudicial sale of the real estate], and the validity of the security instrument and underlying promise to pay once established, the remedy as well as the right become obligations of the contract which may not be impaired by the receivership court.

Clark on Receivers, *supra,* § 976, pp. 1749–50. The case of *Strubinger v. Mid-Union Indemnity Company,* 352 S.W.2d 397 (Mo. App.1961), cited by the receiver as authority of the power of the court to restrain foreclosure despite a contractual power of sale is not in point. That case does not involve a secured creditor such as Emerald but an attempt by an unsecured creditor to garnish assets in the hands of a statutory liquidator.

The judgment of the court to authorize Emerald Financial Corporation to exercise the power of sale under the deed of trust which secures the May 25, 1975, promissory note of the Medallion Insurance Company and the Missouri General Insurance Company is supported by substantial evidence and is affirmed.

All concur.